## INTERNATIONAL TRUST COMPANY *v.* WEEKS.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 31. Argued October 17, 1906.—Decided December 3, 1906.

An action for rent of premises for unexpired term of a lease brought by the lessor against the stockholders' agent to whom the comptroller has released the assets of a national bank is a suit to wind up the affairs of the bank of which the Circuit Court of the United States has jurisdiction.

Under a provision in a lease that in case of reëntry for breach of covenant the lessors may relet the premises at the risk of lessee, who shall remain for the residue of the term responsible for the rent reserved and shall be credited with such amounts only as shall by the lessors be actually realized, as the same has been construed by the highest court of Massachusetts, the lessor has not the absolute discretion, after entry, to relet or not to relet the premises, but it is his duty to prevent unnecessary loss or diminution of rent, and, in the absence of a reasonable effort to relet the premises, cannot recover.

125 Fed. Rep. 370, affirmed.

THE facts are stated in the opinion.

*Mr. Robert M. Morse,* with whom *Mr. William M. Richardson* was on the brief, for plaintiff in error.

*Mr. G. Philip Wardner,* with whom *Mr. Edward E. Blodgett* was on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This is an action on contract brought in the Circuit Court of the United States for the District of Massachusetts, for rent alleged to be due under the terms of a lease made by Henry Parkman and others to the Broadway National Bank.

The original lessors sold the land and building leased to the International Trust Company, plaintiff in error. Defendant

in error is agent of the shareholders of the Broadway National Bank.

The premises leased were the first floor of the building and the basement under the same, "to be used as the business offices of said corporation and for no other purpose." The lease contained a provision for reëntry upon breach of any covenant. "And thereupon the lessors may, in their discretion, relet the premises, at the risk of [ ] one, who shall remain for the residue of said term responsible for the rent herein reserved, and shall be credited with such amounts only as shall be by the lessors actually realized."

On December 16, 1899, the bank became insolvent, and the Comptroller of the Currency appointed a receiver. On February 15, 1900, the Comptroller released the estate of the bank to defendant in error as the stockholders' agent. Between December 16, 1899, and January 5, 1900, the Trust Company entered upon the premises and repossessed itself of the same as of its former estate. The receiver occupied the premises for a while, but it was stipulated that such occupation was not to affect the rights of the parties. Defendant in error occupied the premises until May 19, 1900. He contended in defense of the action that upon the termination of the lease it was the duty of the Trust Company to use all reasonable effort to relet the premises, so as to minimize the damages, and that the company had not done so. And further, that suitable and responsible parties were willing at various times to hire the premises at a rent as great or greater than the rent reserved in the lease.

At the first trial of the case the Circuit Court took the opposite of defendant in error's contention, and held that by force of the lease the Trust Company did not assume any risk, and was only required to use its discretion "with some degree of reasonableness and with some degree of justice, and have some regard to the rights of the position of the other parties concerned." The court further held that the evidence did not show that the company had abused its discretion, and

directed a verdict for it less certain payments made by the occupant of the basement, formerly the bank's tenant. This was reversed by the Circuit Court of Appeals. 125 Fed. Rep. 371. The latter court held that a lessor had the right to reenter and might exercise his discretion to relet the premises at the risk of the lessee. The lessor, it was said, need not go through the form of reletting, but an honest and reasonable attempt to relet should be made, and whether so made was a question for the jury.

Upon the second trial of the case in the Circuit Court the Trust Company expressed its contentions in requests for instructions to the jury as follows: (1) That it was entitled to rent the premises and relet them at the risk of the bank; (2) that there was no obligation upon it to notify the bank of its election so to do, or to relet the premises or attempt to relet them. The court declined to give the instructions, but instructed the jury in accordance with the principle expressed by the Court Circuit of Appeals. The jury returned a verdict for defendant in error, upon which judgment was duly entered. It was affirmed by the Circuit Court of Appeals.

(1) It is objected by defendant in error that the Circuit Court had no jurisdiction of this action. We think otherwise. The action is clearly one to wind up the affairs of the bank. *In re Chetwood,* 165 U. S. 443, 459; *Guarantee Co.* v. *Hanway,* 104 Fed. Rep. 369.

(2) The fact that the Trust Company did not make a reasonable effort to relet the premises was settled by the verdict of the jury against it, and the case is reduced to the simple question whether the company can recover by virtue of the provisions of the lease without any attempt whatsoever to relet the premises.

It is said in argument that the provision in controversy has been found in the usual form of lease in Massachusetts for a generation, and yet its meaning, as now brought in dispute, has not come up for or received explicit decision. To this absence of contention and decision both parties refer with

equal confidence to establish that their respective construc-
tions have been so indisputable as never to have been ques-
tioned.   However, there are some indications of a judgment
between the two constructions in the case of *Edmands* v.
*Rust & Richardson Drug Co.,* 191 Massachusetts, 123, which
may be turned to in passing on a question so essentially local.

The lease passed on contained a provision for an entry by
the lessors to terminate the lease for the breach of covenants,
followed by this language: "But the lessee covenants to be
responsible for any loss or diminution of rent sustained by
lessors in consequence till the end of the lease."   The defend-
ant in the case requested instructions, expressing it.to be the
duty of the lessor to accept any tenant that was satisfactory
financially to defendant.   His instructions were refused, and
the court instructed the jury, among other things, as follows:
"In general, the effort must be that which a reasonable land-
holder would make under the circumstances.   Not every
proposed tenant need be accepted, but an unreasonable refusal
to accept a suitable tenant will be deemed an abandonment
of the election to relet at the risk of the lessee."   Commenting
on the instructions the Supreme Judicial Court said: "That the
jury were left to decide between the parties, in a way of which
the defendant has no reason to complain."

It is manifest from this decision that the lessor, after entry,
has not the absolute discretion to relet or not to relet the
premises, but that it is his duty to "prevent unnecessary loss
or diminution of rent in consequence of the termination of the
lease."

In *Bowditch* v. *Raymond,* 146 Massachusetts, 109, the lia-
bility of the lessor, under the provision of a lease such as that
in controversy, was denied against an insolvent lessee on the
ground that it was dependent upon a contingency, not merely
as to the amount of liability, but as to whether it would ever
attach or arise out of the covenant.   "The lessors," the court
said, "in their discretion might not relet the premises, but
resume possession of them."   This case rests on the principle

expressed by Judge Lowell, speaking for the Circuit Court of Appeals, that if the lessor avail himself of the covenant and reënter he may exercise his discretion to relet the premises at risk of the lessee or occupy them. If he elect to relet he must make "an honest and reasonable attempt to relet." And this is a reasonable and just exaction. It is the spirit as well as the letter of the covenant, fulfilling its security without unnecessary loss to the lessee.

Whether the bank could have made a lease to extend beyond its charter life we need not decide.

*Judgment affirmed.*