## FLEMING et al. v. GAMBLE.

Circuit Court of Appeals, Tenth Circuit.
December 30, 1929.

No. 117.

C. W. Darrow, of Glenwood Springs, Colo., for appellants.

Archibald A. Lee and Benjamin Griffith, both of Denver, Colo., for appellee.

Before LEWIS, COTTERAL, and Mc-DERMOTT, Circuit Judges.

COTTERAL, Circuit Judge. John S. Fleming, Roy B. Howard, and Daniel Densmore, brought this action in the district court of Garfield county, Colo., as the last directors of the Geo. M. Howard Lumber Company, a disorganized corporation of that state, against Joseph A. Gamble, receiver of the First National Bank of Rifle, Colo., to recover the amount of a note for $6,000 and interest, which the lumber company by its president had given to the bank, and the bank had indorsed without recourse before maturity to the Broadway National Bank of Denver, Colo., and which the lumber company had paid to that bank.

The suit was on defendant's motion removed to the federal District Court for Colorado, where plaintiff's motion to remand the case to the state court was overruled, and a judgment was rendered for the defendant on the pleadings. The plaintiffs appeal and seek a reversal on three grounds, which are (1) that the case was not removable and should have been remanded; (2) that the note was not a binding obligation because it was ultra vires of the lumber company; and (3) that the note was given as an accommodation without a consideration to the lumber company.

(1) The first assignment is not well taken because the action is against a receiver of a national bank and has to do with the winding up of the affairs of such a bank, wherein federal jurisdiction is conferred by section 41, U. S. Code (28 USCA § 41(16), and it is removable by virtue of section 71 of that Code (28 USCA § 71). International Trust Co. v. Weeks, 203 U. S. 364, 27 S. Ct. 69, 51 L. Ed. 224; Moulton v. National Farmers' Bank (D. C.) 27 F.(2d) 403; Barons v. First National Bank (D. C.) 28 F.(2d) 615.

(2) As will appear from a summary of the pleadings, no facts were alleged to show that the note transaction was an ultra vires act. The note may have been justified by the dealings between the lumber company and the stockholders of the Rifle bank, or the company may have been estopped to raise the question of corporate authority. Presumably

it was a valid act, and the burden was on the plaintiff to prove and of course to plead the facts showing it to be beyond the powers of the company. 10 Cyc. 1135; 5 Ency. Pl. & Pr. 95. Besides, as the note was paid and the transaction closed, the courts will not grant relief concerning it. 10 Cyc. 1163; Alabama Consol. Coal & I. Co. v. Baltimore Trust Co. (D. C.) 197 F. 347; Dillon v. Myers, 58 Colo. 492, 146 P. 268, Ann. Cas. 1916C, 1032.

▮▮ (3) The third and chief ground of the appeal is that the note was given as a mere accommodation to the Rifle bank, and was appropriated into its assets and negotiated by it, without consideration to the lumber company. By general rule, a judgment on the pleadings is proper where they are insufficient to sustain a different judgment. 11 Ency. Pl. & Pr. 1030. And the allegations made by the opposite party are to be taken as true, in so far as they are well pleaded. Bieser v. Stoddard, 73 Colo. 554, 216 P. 707. The pleadings must be reviewed, but immaterial matters need not be noticed.

▮ The amended complaint alleges that this note of the lumber company for $6,000 was dated August 18, 1925, that it was payable to the order of the Rifle bank, and was executed and delivered to that bank without any consideration therefor and wholly as an accommodation for its use and benefit, that it was before maturity transferred by that bank without recourse to the Broadway bank which held it in due course and collected it, and that the proceeds of the note went into the assets of the Rifle bank, whereby it became liable to the company for the amount of the note.

The receiver of the Rifle bank answered, alleging that on November 18, 1921, four stockholders who were also directors of that bank, gave a note for $12,000, for value, to the First National Bank of Denver, and procured the lumber company to give the $6,000 note to pay said $12,000 note, and it did extinguish the same, and that the $6,000 note had been renewed from November 18, 1921. Pursuant to an order of the court, the receiver filed a bill of particulars, alleging that the Rifle bank had indorsed to, and obtained credit upon certain negotiable paper with, the First National Bank, and that bank, insisting the paper be taken up or security be deposited to justify the credit, the $12,000 note was given to justify the credit.

By their replication, the plaintiffs alleged that the Rifle bank had rediscounted to the First National Bank its negotiable paper, without recourse, subject to redemption, for a credit of $75,000 which went into the assets of the Rifle bank, with a guaranty of payment by the stockholders who later made the $12,000 note; that the First National Bank, deeming itself insecure, called upon them to make good their guaranty, and they did this by means of the $12,000 note, and it was applied to the redemption of the unpaid rediscounted paper; that the $12,000 note was without consideration to the makers, and the guaranty was an accommodation to the Rifle bank; that the $6,000 note, later renewed, was executed and delivered without consideration to the Rifle bank at its request only, and went into that bank's assets, and that bank used it to retire the $12,000 note.

The replication further alleged that the Rifle bank had sufficient funds to pay both the $12,000 note and the $75,000 obtained on its paper, and that said note was not given to or accepted by the First National Bank to justify the credit it had extended. And the last paragraph of the replication contained the averments that the makers of the $12,000 note and the $6,000 note intended the same, not as a gift to the Rifle bank, but as a loan for its use and benefit, to be protected and paid by that bank to the said stockholders or the lumber company as the case may be, "& was so agreed between the Plf. and the Bank of Rifle."

The words in quotation were added by amendment immediately prior to the argument of the motion for judgment on the pleadings, over the objection of the defendant for nonconformity with the practice, for want of good cause, for uncertainty, and because a departure from the cause of action.

There are assertions in the appellants' pleadings that do not comport with the facts alleged, or are immaterial in view of those facts. For example, it is claimed the guaranty of the stockholders and the note for $12,000 were without consideration and an accommodation to the Rifle bank. But the fact appears that the stockholders of the bank guaranteed the paper on which the loan of $75,000 was obtained by the Rifle bank, and the guaranty was a binding obligation in being supported by the credit, as a consideration flowing to the bank. The $12,000 note was given to the First National Bank to meet a direct liability on the guaranty, and this was the consideration for the note. It is of no consequence that these transactions may have been accommodations to the Rifle bank, as there were ample considerations to sustain them.

But the plaintiff's cause of action turns upon the facts concerning the $6,000 note.

It is alleged this was an accommodation note, requested by the Rifle bank, that the proceeds went into that bank, and that they were used to retire the $12,000 note. The $6,000 note was payable to the order of the Rifle bank and indorsed by it without recourse. It doubtless went through that bank. But the assertion that the proceeds of that note went into it is a mere theory. No facts are alleged to show the bank's dealing with it, except as a mere agency for the payment of the $12,000 note. The Rifle bank had no liability on the $12,000 note, or on the rediscounted paper. It took the $6,000 note, and with it paid the $12,000 note. Did the stockholders direct this to satisfy their liability on the $12,000 note, in response to the demand of the First National Bank? The fact is not directly alleged, and we therefore inquire whether the equivalent of it appears in the pleadings. Otherwise the $6,000 note stands as a mere gratuity to the Rifle bank, which is denied in the last paragraph of the replication, where it is also alleged to have been intended as a loan to the bank. But it is not alleged to have been in fact a loan, unless by the quoted amendment, which is too indefinite to be considered as pleading a loan agreement; it is insufficient, in that but one plaintiff was a party to it; and it is in direct conflict with the amended complaint, which clearly alleges the note transaction was an act of accommodation to the bank.

The $6,000 note was therefore neither a gift nor a loan to the Rifle bank. As there is no averment that the bank in any way converted the note, the plain import of the pleadings taken together is that the bank employed it as authorized, and the accommodation was extended to the stockholders by the retirement of their note for $12,000. This view is so persuasive that we deem it useless to remand the case for a trial upon the evidence.

The payment of the $12,000 note was a sufficient consideration to bind the lumber company on its note for $6,000, and it is wholly immaterial that there was no direct consideration for the latter to the company. The rule is thoroughly settled that an accommodation note is a binding obligation where the consideration was given to another party. 8 C. J. 256; Chase v. Du Pont Nat. Bank (C. C. A.) 277 F. 235; Skagit State Bank v. Moody, 86 Wash. 286, 150 P. 425, L. R. A. 1916A, 1215; Nalitzky v. Williams (C. C. A.) 237 F. 802.

Our conclusion is that the judgment rendered by the District Court was right, and it is therefore affirmed.