## LAWRENCE NAT. BANK v. RICE et al.
### No. 1254.

Circuit Court of Appeals, Tenth Circuit.
April 30, 1936.

For prior opinion, see 82 F.(2d) 28.

Justin D. Bowersock, Robert B. Fizzell, and John F. Rhodes, all of Kansas City, Mo., for appellant.

Raymond F. Rice, of Lawrence, Kan., for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The record upon which this appeal was heard made it appear that appellees filed an original bill of complaint in the court below. Neither in the record, the assign-

ments of error, the briefs, nor the oral arguments was there an intimation that the cause orginally was brought in the state court, removed to the federal court, a motion to remand filed, argued and overruled. The case turned upon the construction of a contract by which a national bank had satisfied its creditors in order to accomplish its dissolution as authorized by the National Banking Act, and was bottomed upon the proposition that the dissolved bank, having complied with the federal statute authorizing a voluntary dissolution, was protected by the statute of limitations from claims of its creditors. 12 U.S.C.A. §§ 181, 182. Involving, as it did, the very contract by which the affairs of a national bank were wound up, and the appellees being a liquidating committee appointed to wind up its affairs, there was jurisdiction on the face of the case by virtue of section 24 (16) of the Judicial Code (28 U.S.C.A. § 41 (16), which expressly confers jurisdiction upon the federal courts in all cases "for winding up the affairs of any such [national] bank." The point not being referred to in the record, briefs, or arguments, and jurisdiction being apparent on the face of the record, no reference thereto was had in the opinion.

In their petition for rehearing, appellees now advise that the case was not originally brought in the federal court as the record disclosed, but in the state court. By certiorari we have brought up the removal papers which should have been in the original record. In their petition for rehearing, appellees state that their failure to bring up a complete record was deliberate; that, having prevailed below, they did not care to challenge the jurisdiction to render a judgment in their favor; but, having now lost, the point becomes of importance and interest. We quote their italicized explanation:

"Appellees gave the matter serious consideration but since the urging of such objections on appeal would have placed them in the anomalous position of attacking the validity of a judgment in their own favor, and since the decree of the trial court fully sustained all of their contentions, they felt justified in arguing the case upon its merits and in passing over all jurisdictional questions."

Assuming full responsibility for the situation, exonerating this court of blame, appellees correctly state that jurisdiction of the subject matter in a federal court is al-

ways open to inquiry and cannot be waived. We proceed now to the inquiry which should have been made before weeks of labor were spent on the merits of this troublesome case, Did the lower court have jurisdiction of the controversy?

Section 41, subsec. 16, 28 U.S.C.A. confers jurisdiction upon the district courts of the United States "of all cases commenced by the United States, or by direction of any officer thereof, against any national banking association, and cases for winding up the affairs of any such bank."

 A liquidating committee for a national bank which has voluntarily dissolved, while a convenient and proper instrumentality for winding up the affairs of a bank, O'Connor v. Watson (C.C.A.) 81 F.(2d) 833, Holland Banking Co. v. Continental Nat. Bank (D.C.) 43 F.(2d) 640, affirmed (C.C.A.) 50 F.(2d) 19, is not an office created by congressional act as are the offices of receiver and statutory agent. Its members are therefore not officers of the United States within the meaning of section 41 (1), 28 U.S.C.A. Davis v. McFarland (C.C.A.5) 15 F.(2d) 612, certiorari denied 273 U.S. 754, 47 S. Ct. 457, 71 L.Ed. 875. The phrase "and cases for winding up the affairs of any such bank" is in the conjunctive and is a distinct grant of jurisdiction. If this is such a case, it is not necessary that plaintiffs be officers of the United States or that a substantial federal question be involved. Any other construction would render the quoted phrase meaningless. Subsection 1, § 41, confers jurisdiction of suits brought by an officer of the United States, and of those arising under the constitution and laws of the United States. If subsection 16 confers any additional jurisdiction at all, it must be over cases not brought by officers of the United States and not arising under the laws of the United States. If this is, therefore, a case for winding up the affairs of a national bank, there is jurisdiction.

The history of this enactment may aid in determining its scope. By the constitution, the judicial power of the federal courts was extended to cases arising under the constitution and laws of the United States. Congress did not, however, authorize the inferior courts to exercise that power by the Judiciary Act of 1789 (1 Stat. 73). It was held, therefore, in Bank of United States v. Deveaux, 5 Cranch, 61, 3 L.Ed. 38, that the first National Bank

644

could not sue in the United States courts because of the authority contained in its charter to sue in courts of record. The act creating the second National Bank specifically authorized the bank to sue in the federal courts. In Osborn v. Bank of U. S., 9 Wheat. 738, 816, 6 L.Ed. 204, it was held that such grant of jurisdiction was warranted by the constitution, since every suit brought by a corporation incorporated by Act of Congress arose under the laws of the United States. By the Act of March 3, 1875 (18 Stat. 470) Congress extended the jurisdiction of the circuit courts to cases arising under the laws of the United States.[1] It was thereupon held, following Osborn v. Bank of U. S., supra, that the federal courts had jurisdiction over all suits by or against national banks. Petri v. Commercial Bank, 142 U.S. 644, 648, 12 S.Ct. 325, 35 L.Ed. 1144; Bankers' Trust Co. v. Texas & Pac. R. Co., 241 U.S. 295, 36 S.Ct. 569, 60 L.Ed. 1010. Congress then, by section 4, Act of July 12, 1882, enacted that, except as to suits between national banks and the United States, the federal courts should have the same jurisdiction over national banks as they had over state banks and no more. This jurisdiction was broadened by the Act of March 3, 1887 (24 Stat. 552), as corrected by the Act of August 13, 1888 (25 Stat. 433), to include "cases for winding up the affairs of any such bank." The Judicial Code, Act of March 3, 1911, § 24 (16), supra, grants jurisdiction over such cases affirmatively.

It thus appears that from 1875 to 1882 the federal courts had jurisdiction under the general act over all litigation involving national banks; that from 1882 until 1887 it had, with one exception, no more jurisdiction over the litigation of national banks than of state banks; and that from 1887 to the present jurisdiction also exists over cases for winding up the affairs of national banks, separately and distinctly granted by an amendatory act.

What did Congress have in mind in using the phrase "winding up the affairs" of a national bank? Specifically, did Congress intend to exclude those cases growing out of a voluntary liquidation and confine jurisdiction to those cases where the liquidation is carried out by an officer of the United States—a receiver or statutory agent?

Two short answers suggest themselves: If Congress intended to confine the scope of the phrase to one type of winding up, it failed to say so; again, if it is so confined, no jurisdiction is granted by the 1887 amendment, for jurisdiction is granted in suits brought by officers of the United States by the first subsection of the same section.

An examination of the National Banking Act demonstrates, we believe, that no such forced and narrow construction should be put upon the broad language employed by Congress. The National Banking Act comprises a complete code for the organization, operation, and dissolution of national banks. As was said by Mr. Justice Field in Cook County Nat. Bank v. United States, 107 U.S. 445, 448, 2 S.Ct. 561, 564, 27 L.Ed. 537,

"Everything essential to the formation of the banks, the issue, security, and redemption of their notes, the winding up of the institutions, and the distribution of their effects, are fully provided for, as in a separate code by itself, neither limited nor enlarged by other statutory provisions with respect to the settlement of demands against insolvents or their estates."

After providing for the organization and operation of such banks, Congress turned to the question of their dissolution. The Act of June 3, 1864 (Rev.St. §§ 5220, 5221 [12 U.S.C.A. §§ 181, 182]), provided for voluntary dissolution by a vote of two-thirds of its outstanding stock together with a published notice that it was "closing up its affairs." The Act of July 14, 1870 (12 U.S.C.A. § 184), provided an exemption not pertinent here, but in the act referred to a bank in course of voluntary liquidation as one "winding up its business." In Rev.St. § 5225, as amended by the Act of February 27, 1877, § 1 (12 U.S.C.A. § 186) reference is again made to a bank which, in voluntary liquidation, has "commenced to close its affairs." By the Act of June 30, 1876, § 1 (12 U.S.C.A. § 191) provision was made for the appointment of a receiver who should "close up such association." Section 2 of that act (12 U.S.C.A. § 65) authorized a creditor of any bank which had voluntarily dissolved to bring a suit to enforce the liability of the shareholders. Thus when the Act of March 3, 1887, was passed, there were two methods of dissolution, voluntary

---

[1] Such jurisdiction was conferred by the Act of February 13, 1801 (2 Stat. 92), but this Act was repealed by the Act of March 8, 1802 (2 Stat. 132).

and involuntary, for national banks. In each, provision was made for enforcing shareholders' liability. In the case of voluntary dissolution, the phrase was used "closing up its affairs" as was also "winding up its business." In the case of involuntary dissolution, the phrase was used "close up such association." When, then, in 1887, Congress spoke of "winding up the affairs" of a national bank, can any fair reason be advanced that it intended to exclude those banks in process of voluntary liquidation? No reason for so limiting the language used has been suggested, and we can see none. In Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L.Ed. 864, the court treated voluntary and involuntary dissolutions as two methods of arriving at the same end, followed by the same rights and liabilities.

The case of Guarantee Co. of North Dakota v. Hanway (C.C.A.8) 104 F. 369, seems to be squarely in point. There a suit was brought against the shareholders' agent of a national bank, appointed after all the debts had been paid to liquidate the remaining assets for distribution to the shareholders, thus performing the same function after a receivership that a liquidating committee does before. The suit was for $4,000 damage for the wrongful sale of a pledge. The jurisdiction of the federal court was challenged. In an exhaustive opinion by Judge Walter H. Sanborn, the jurisdiction was sustained on three independent grounds, one of which was that it was a suit to wind up the affairs of the bank. In International Trust Co. v. Weeks, 203 U.S. 364, 27 S.Ct. 69, 70, 51 L.Ed. 224, a shareholders' agent was sued for breach of a lease. Jurisdiction of the federal court was again challenged. In sustaining the jurisdiction the Supreme Court cited with approval Judge Sanborn's opinion, saying, "The action is clearly one to wind up the affairs of the bank." Jurisdiction resting on that ground, it was quite immaterial that the defendant was a shareholders' agent. Likewise of interest is George v. Wallace (C.C.A.8) 135 F. 286, where a suit was brought by a creditor to recover the statutory liability of shareholders in a national bank which had voluntarily dissolved. That court sustained jurisdiction as a case for winding up the affairs of a national bank, and the Supreme Court affirmed Wyman v. Wallace, 201 U.S. 230, 26 S.Ct. 495, 50 L.Ed. 738, on the ground that the case arose under the laws of the United States. See, also, Bell v. Kelly (D.C.Ill.) 54 F.(2d) 395; Studebaker Corporation v. First Nat. Bank (D.C.S.C.) 10 F.(2d) 590; Citizens' Nat. Bank in Waxahachie v. Citizens' Nat. Bank (D.C.Tex.) 9 F.Supp. 513.

Cited as contra is Davis v. McFarland (C.C.A.5) 15 F.(2d) 612, certiorari denied 273 U.S. 754, 47 S.Ct. 457, 71 L.Ed. 875. That suit was brought by a shareholder to recover damages against the directors of a bank individually for having made excess loans. It had nothing to do with the affairs of the bank, and why the liquidating committee was joined as a defendant is not disclosed. All the court held, and we agree, was that the committee were not officers of the United States. Decisions of two district courts are cited, Moulton v. National Farmers' Bank (D.C.Minn.) 27 F.(2d) 403; Barons v. First Nat. Bank (D.C.Kan.) 28 F.(2d) 615. But these cases simply held that a creditor might adjudicate his claim against a national bank in the state court as long as no relief was asked against the receiver or assets in his possession. We do not see their bearing here. Nor do we see the bearing of cases holding that a receiver, not a necessary party to litigation, may not remove a cause to the federal courts.

We are also warned that if jurisdiction be here sustained, a liquidating bank or its committee may sue on every ten dollar note of the bank, as can a receiver of a bank which is in process of involuntary liquidation. The conclusion does not follow. This suit is brought to determine whether the Watkins Bank had barred its creditors by voluntary dissolution and the publication of notices in accord with federal statutes, and to construe the contract by which its liabilities were assumed by the Lawrence Bank. The case is bottomed upon a right given by a federal statute and to construe the contract by which its affairs were wound up. That contract is the very heart of the winding up of the affairs of the Watkins Bank. A case involving its construction is one therefore "for winding up the affairs" of a national bank. But if the conclusion does follow, upon which we express no opinion, and if a bank in voluntary liquidation should be placed on a different footing from one in involuntary liquidation, as appellees urge, it is a matter for Congress and not the courts. We conclude the jurisdiction exists.

■ The petition asks for a rehearing on the merits. It is pointed out that the Lawrence Bank has entered a service charge on its books against its depositors and therefore will, in time, absorb the morgue accounts if they are not theretofore checked out; and that such charge inures to the stockholders of the Lawrence Bank. The depositors are not parties to this action and the right to make such service charges cannot be here adjudicated. Sufficient now to say that the mere entry of such charge on the books does not bind a depositor; whether any or all these depositors can be required to pay an expense charge will not be determined until it is demanded of the depositor and he declines to pay it. Whatever may be the outcome of that controversy, it sheds no light upon the intention of the parties when this contract was made.

■ In this petition for rehearing—and not before—appellees offer to give a bond to repay the Lawrence Bank such deposits as it may be hereafter required to pay. We cannot now amend this contract by inserting a clause which the parties did not think of when the contract was made.

■ The petition for rehearing silhouettes the controversy in one sentence. Referring to the collateral security to the note, appellees say, "Such funds the Lawrence Bank undertook to disburse to the creditors of the Watkins Bank." Appellees construe the contract as an agreement by which the Lawrence Bank took over the assets of the Watkins Bank and agreed to pay, out of those assets, such depositors as demanded their money before the statute of limitations had run in favor of the Watkins Bank, and to turn what was left back to appellees for distribution to the stockholders of Watkins, thus leaving the depositors who had not withdrawn their deposits within the statutory period without remedy against Watkins because of the statute of limitations and without remedy against the Lawrence Bank because its agreement was not one of outright assumption, but only to pay out of funds received from Watkins. In appellees' brief it is now conceded that the Kansas courts recognize the right of a third party to sue on contracts made for his benefit, and that the statute of limitations does not commence to run against a going bank until a demand is made. It is conceded therefore that the Lawrence Bank is still liable to these depositors unless its agreement to pay them is limited to payment out of funds received from Watkins before the statute of limitations ran as to Watkins. Yet in appellees' opening statement at the trial, it was stated that the "prime interest" of the directors of Watkins in making this contract was to have their depositors "promptly paid" without sacrificing the assets of the bank. The bill of complaint alleges that "by reason of the placing of said Watkins National Bank in liquidation, as hereinabove set out, and the lapse of time subsequent thereto, all claims of depositors in said Watkins National Bank whose accounts were included in the 'morgue account' of said Bank have been barred and cannot now be asserted either against said Watkins National Bank or against said Lawrence National Bank as a party to said liquidation agreement hereinabove referred to."

If the "prime interest" of the directors in making this contract was to pay the depositors of Watkins, that purpose is thwarted by appellees' present contention that only such depositors should be paid as drew out their deposits before the statute of limitations protected Watkins from their claims. That "prime interest" is carried out by construing the agreement as an unqualified assumption of liability by the Lawrence Bank in consideration of a note, secured by collateral and Mrs. Watkins' indemnity agreement.

No useful purpose will be subserved by a rehearing on that pivotal question. We have given it as careful consideration as our capabilities permit and adhere to the views heretofore expressed. If the parties really intended that the Lawrence Bank should simply take over certain assets, liquidate them, pay them out to depositors of Watkins as long as they lasted, and turn back whatever was left when claims of depositors were barred by the statute of limitations, then appellees are right. Such construction is hard upon depositors but is neither impossible nor illegal. If, on the other hand, the Lawrence Bank unqualifiedly assumed these liabilities in consideration of a secured note, then the Lawrence Bank concededly still is liable and cannot be required to refund part of the money received in payment for its contract of assumption. The majority of the court adhere to the view that the latter is the correct construction, and that such interpretation was long put upon the contract by the parties. We do not believe that the

published notices of the transaction were a part of a scheme to lull depositors into security while the statute of limitations was running in favor of the Watkins Bank, but expressed the then intent of the banks involved, towit, that the Lawrence Bank assumed these deposits. If that was the intent then, it is the contract now.

The petition for rehearing is denied.