**WICHITA ROYALTY CO. et al. v. CITY NAT. BANK OF WICHITA FALLS et al.**

**CITY NAT. BANK OF WICHITA FALLS et al. v. WICHITA ROYALTY CO. et al.**

**No. 8541.**

Circuit Court of Appeals, Fifth Circuit.

March 23, 1938.

Rehearing Denied April 19, 1938.

---

Guy Rogers and Ray Bland, both of Wichita Falls, Tex., and Charles L. Black, of Austin, Tex., for appellants.

Leslie Humphrey, T. R. Boone, and Arch Dawson, all of Wichita Falls, Tex., and Tarlton Morrow, of Houston, Tex., for appellees.

Before SIBLEY and HOLMES, Circuit Judges, and MIZE, District Judge.

SIBLEY, Circuit Judge.

On October 11, 1930, in a state court, City National Bank of Wichita Falls (herein called the old bank) sued Wichita Royalty Company and E. E. Scannell, its trustee, to recover on a note and on an indorsement made by them of another note, joining others from whom collateral equitable relief was sought. The above-named defendants filed a cross-bill asserting a large liability against the bank for a balance of a deposit account misappropriated by or with the assistance of the bank. The bank on a trial prevailed, but on appeal the Supreme Court of Texas sweepingly sustained the contentions of Wichita Royalty Company and Scannell, trustee, and remanded the case for a new trial, expressly leaving questions of fact open. Wichita Royalty Co. v. City National Bank, 127 Tex. 158, 89 S.W.2d 394, 93 S.W.2d 143. Meanwhile the bank, closed by the bank holiday of March, 1933, did not reopen, but a new corporation called City National Bank in Wichita Falls (herein called the new bank) was created which purchased from the old bank its best assets, assuming stated liabilities not including the claim of Wichita Royalty Company. The remaining affairs of the old bank went into the hands of a liquidating agent pursuant to 12 U.S.C.A. § 181. No receiver was appointed. Thereafter in May, 1936, the old bank filed an amended petition in the state court, and the Wichita Royalty Company and its trustee Scannell on June 18, 1936, filed what they termed a "third amended original answer, cross-action and intervention in lieu and in amendment of" their former pleadings. This pleading answered the amended petition, restated the cross-demand previously asserted, carrying it back several more years, and then set up the failure and insolvency of the old bank and the establishment of the new bank with practically the same officers, attacked the sale of assets from the old to the new bank, and charged that it was designed to defeat the claims of Wichita Royalty Company and to prefer others contrary to the National Banking Act as found in 12 U.S.C.A. § 91, and was void. It asserted that these and all other assets of the old bank constituted a trust fund for the ratable payment of all creditors. Malfeasance of the directors was charged. Several additional parties were made including the new bank, the liquidating agent of the old bank and its directors, and the administrator of G. W. Peckham, the former trustee of the Wichita Royalty Company. Besides judgment for its demand in a sum of $200,000 and a general accounting between all parties, and general legal and equitable relief, Wichita Royalty Company prayed: "That the old bank be declared to have been insolvent * * * and that its assets be decreed to be a trust fund for the benefit of all creditors, * * * that all creditors of the old bank be given notice of the pendency of this suit and permitted to intervene herein * * * and that such fund be ratably distributed between the creditors of the old bank existing at its insolvency." Petitions were at once filed to remove the cause to the federal court on the grounds that the cross-petition was a case for winding up the affairs of a national bank, and a suit arising under the laws of the United States and involving more than $3,000. Removal being allowed, motions to remand were made asking the remand of the whole cause, and of each separate cause of action involved. These were denied. Repleading was ordered, however. The case was tried and a decree rendered which denied the old bank recovery against Wichita Royalty Company and denied the latter recovery against the old bank; and ordered sale of the remaining assets of the old bank, and retained jurisdiction to wind up its affairs. Appeals taken by each side are before us contesting these judgments.

The case was discussed interestingly in an opinion by the District Judge, but there was no finding of the facts specially, nor a separate statement of conclusions of law as required by Equity Rule 70½, 28 U.S.C.A. following section 723. The evidence is long and complicated. A score or more of transactions are contested in the pleadings and evidence. Clear-cut findings as to what was done in each and of the

knowledge and participation of the bank and its officer Harrell in each are necessary. The opinion goes into no detail, but expresses general conclusions such as that the court found no dishonest transaction on the part of Peckham, the former trustee, and that the bank had not sustained its burden as to some matters and the Wichita Royalty Company had similarly failed as to others. We held this an insufficient compliance with the rule in Southwestern Bell Telephone Co. v. City of San Antonio, 5 Cir., 75 F.2d 880, 882, saying: "The contested [facts] should be put in such detail as will decide each contest made concerning them, the purpose of the rule being to aid review by enabling it to be restricted to the exact points on which error is claimed." Complaint is made by the main appellants on this ground; and we find that we should be obliged to study out the whole of this complicated record without the assistance of special fact-findings specifically challenged. We shall remand the cause without allowing costs to either side that Rule 70½ may be complied with and a new decree entered. But as was done in the case just cited, we shall pass upon some of the major questions of law, as an aid in the further proceedings; and necessarily upon the question of jurisdiction.

■ There is federal jurisdiction, and remand was rightly refused. The new cross-bill filed by Wichita Royalty Company and Scannell, as trustee and as stockholder, prayed for a collection and restoration of all the assets of the old bank, which was alleged to be insolvent, and for a distribution of them to all creditors. That plainly would be a winding up of the affairs of the old bank. The District Court has a special jurisdiction of such a case. 28 U.S.C.A. § 41 (16); International Trust Co. v. Weeks, 203 U.S. 364, 27 S.Ct. 69, 51 L.Ed. 224. It has been held indeed that where no other relief is prayed a state court should not exercise jurisdiction. Birdsey v. Commercial National Bank, 143 Ga. 627, 85 S.E. 881. Removal of such a suit is authorized. 28 U.S.C.A. § 71; Lawrence Natl. Bank v. Rice, 10 Cir., 83 F.2d 642; Bailen v. Deitrick, 1 Cir., 84 F.2d 375; Studebaker Corporation v. First National Bank, D.C., 10 F.2d 590. It is a "suit of a civil nature * * * arising under the * * * laws of the United States * * * of which the district courts of the United States are given original jurisdiction," within the very words of the removal statute, 28 U.S.C.A. §

71, for a national bank is necessarily wound up under the provisions of the National Bank Act. Davis v. Elmira Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700. Moreover, the effort to set aside the transfer of the assets to the new bank as violative of 12 U.S.C.A. § 91 made it a case arising under the laws of the United States and involving more than $3,000, and hence removable. The laws of the United States are to be directly applied both in testing the validity of the transfer and in ratably distributing all the assets to creditors. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, is not to the contrary.

■ But it is urged that one cause of action, that of the Wichita Royalty Company against the old bank, had been before the state courts for several years and it was too late to remove it, and that the same was true of the suit by the old bank on its notes; and additionally that the old bank could not remove its own suit. It is of course true that neither of these controversies could have been independently removed and neither was sought to be. They come to the federal court as a part of the case asserted by the Wichita Royalty Company in its new cross-bill. That pleading presented for the first time the elements of federal jurisdiction, and there was no delay in removing thereafter. The matters of the insolvency of the old bank and the illegal transfer of its assets and their final disposition might have been made the subject of an independent bill, but Wichita Royalty Company elected to attach them to the pending litigation. It cannot complain that the whole case is thereby rendered removable. It is true that this results in the trial in the federal court of controversies of which there would not otherwise have been federal jurisdiction. The jurisdiction over them is dependent and ancillary. Hoffman v. Lynch, D.C., 23 F.2d 518. The situation is like that where, in an original suit in a federal court, jurisdiction is based on a federal question; but all other matters are to be decided also, even though it turns out that the federal question is not necessary to be decided at all. Green v. Louisville R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88; Siler v. Louisville R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753. Where removal of the whole case is for local prejudice and influence, the removal statute, 28 U.S.C.A. § 71, expressly provides for a partial remand, and it is suggested in Hoffman v. Lynch, supra, that there may be a discre-

tionary power to make such in other removals. See discussion in Tillman v. Russo-Asiatic Bank, 2 Cir., 51 F.2d 1023, 80 A.L.R. 1368. There was no abuse of discretion here in retaining the whole controversy, because each of the elements bore on the others. In order to collect and distribute the assets of the old bank it would be necessary to try the question whether the note and indorsement sued upon by the bank were valid, as well as whether the bank owed the cross-demands asserted against it. Indeed the insolvency of the bank hangs on the decision, and consequently the validity of the transfer to the new bank. In a practical view, deciding the causes of action involving the federal questions required decision of the others.

After removal, proceedings had in the state court in general stand good until dissolved or modified in the federal court. 28 U.S.C.A. §§ 79, 81. "The Circuit [now District] Court, when a transfer is effected, takes the case in the condition it was when the State court was deprived of its jurisdiction. The Circuit Court has no more power over what was done before the removal than the State court would have had if the suit had remained there. It takes the case up where the State court left it off." Duncan v. Gegan, 101 U.S. 810, 812, 25 L.Ed. 875. It is therefore asserted, citing as in point Williams v. Conger, 125 U.S. 397, 8 S.Ct. 933, 31 L.Ed. 778, that the opinion of the Supreme Court of Texas, which was not followed by the District Judge, is res judicata or at least the law of the case, as it would have been in the state courts. That decision is not res judicata because it was not a final judgment. It affirmed no judgment, but reversed it and directed a new trial. It could not bind the parties (except the liquidating agent) introduced into the case since it was rendered. No doubt it would have been accepted as the law of the case on the same facts upon a retrial in the state court, and ought to have been so regarded in the District Court. But we think that it is not absolutely binding on this court,[1] though entitled to the great consideration always due the decision of the highest court of the state where the litigation arose, and always accorded to the decisions of that eminent court. This is so because on a second appeal the Supreme Court of Texas could modify or recede from its former opinion if satisfied of its incorrectness,[2] Messinger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152; Seagraves v. Wallace, 5 Cir., 69 F.2d 163; and this court is its successor as the appellate tribunal for this case. It has the same power to correct what may be clearly wrong. In searching for the correct rule we should at last be governed as to a question of federal law by the decisions of the Supreme Court of the United States. On a question of general commercial law we should also look to that court, since we are answerable to it, remembering that where the true rule is in doubt there may be a leaning to that established by the local decisions. Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398. On a question of purely local law the decisions of the Supreme Court of Texas should govern, whether rendered in this or another case. The main questions here relate to the powers of a trustee in respect of his trust, and to the liability of a bank for a general deposit of trust funds; and for money misapplied by a depositor by paying it out to the bank itself or on checks to others. No Texas statute applies. The general principles of equity and of commercial and banking law govern. We shall take the middle ground above pointed out. As to Williams v. Conger, supra, that was a land case in which the state decisions have peculiar weight, and the state decision was used to support rather than control the decision of the federal court. We proceed to set forth our views especially on points not in harmony with those expressed by the Supreme Court of Texas.

In bare outline, what happened was this: In June, 1920, one Robertson executed and recorded a declaration of a trust, naming it Wichita Royalty Company, for the benefit of holders of certificates of ownership, the capital being fixed at $1,000,000 to be raised by selling the certificates. The declaration provides: "The general purposes of this Company are to buy and sell oil and gas royalties and other oil and gas properties." "The entire affairs of this trust shall be

---

[1] Compare Savell v. Southern Ry. Co., 5 Cir., 93 F.2d 377, where this court held itself not bound by a decision on demurrer in the state court as being the law of the case.

[2] The readiness of that court to recede from error appears in its complete retraction of its first decision in a case argued and decided with this case. Quanah, A. & P. Ry. Co. v. Wichita State Bank, 127 Tex. 407, 93 S.W.2d 701, 106 A.L.R. 821, superseding Tex. Sup., 89 S.W.2d 385.

managed by one trustee * * * and he may appoint, remove or reappoint such officers, agents and other assistants as he may think best, define their duties and fix their compensation." "The title to all property shall be made and held in the name of the trustee as such trustee." "The trustee shall have full and exclusive power and authority to conduct the business and affairs of this trust, to purchase, etc., any property necessary or proper for the purpose of the trust; to sell and convey all property, etc., to borrow money on the credit of the trust * * * to execute notes therefor * * * and generally to do things which in his judgment are necessary and prudent in the management and conduct of the business of the Company." In the event of vacancy a new trustee is to be appointed by the Judge of a named court. "The trustee shall be responsible only for his own wilful and corrupt breach of trust and not for any honest error of judgment." Provision is made for the compensation of the trustee, and for ending the trust and distributing its funds. Robertson, the first trustee, employed Scannell, the present trustee, as his bookkeeper. In 1923 G. W. Peckham was appointed trustee and so continued till his sudden death November 7, 1929. He continued Scannell in charge of his books and records with the title secretary and treasurer, though Scannell owned no certificate. Peckham kept the funds of the trust in the old bank in an account in the name of Wichita Royalty Company. He had also an individual account. He bought and sold oil properties for himself as well as for the trust. His sales to himself as trustee and the transfer of the trust's funds to his own account from time to time make the trouble here complained of. Scannell became trustee January 2, 1930. He had quite full knowledge of Peckham's operations and had signed most of the checks for the trust, detaching and filing vouchers which showed fully what each was for. He had all the deeds and other papers as a secretary should. After his appointment as trustee he audited the trust, repudiated a few transactions, but undertook expressly to ratify one touching the "Marlborough Addition" (a town lot enterprise), assisted in incorporating it as Texas Investment Company, accepting for the trust its half of the capital stock and becoming himself its president. The notes originally sued on relate to the Marlborough Addition enterprise. It failed a year and a half later, and when the bank sued on the notes, Scannell, taking legal advice, repudiated it both as in origin a transaction between Peckham and Peckham as trustee, and as not being within the scope of the trust because not an oil or gas property but city building lots. Various other of Peckham's transactions were also attacked as involving the bank and its officer Harrell in liability. Peckham's estate was not sued by Wichita Royalty Company until the last cross-bill was filed June 18, 1936.

We pretermit discussion of Peckham's liability to his trust. A money recovery was held barred in the District Court, and his estate is said to be insolvent.

■ The liability of the old bank may be considered in three aspects: First, for trust funds received by it on individual debts due by Peckham. Second, for improperly paying out checks drawn on the account of Wichita Royalty Company. Third, for improperly paying checks drawn on Peckham's individual account from trust funds commingled with it. As to the first, the bank is liable to restore to the trust anything paid it directly from the Wichita Royalty Company account for personal debts of Peckham, for it is bound to regard such payments as a direct misapplication of which it is the beneficiary, unless it can show that Peckham because of the then state of his accounts with the trust was entitled to be paid the money from it and duly charged himself with it. If the bank received payment from his individual account when it contained only trust funds and knew or should have known that it was taking such funds, it must repay them. Atlanta & St. Andrews Bay R. Co. v. Barnes, 5 Cir., 95 F.2d 273.

■ As to the second liability the bank was ordinarily authorized and bound to honor checks drawn by authorized persons on the Wichita Royalty Company account. These were mostly signed by Scannell as secretary and treasurer, but sometimes by Peckham as trustee. Either was authorized to sign checks. Peckham's sole authority over the trust did not of course extend to the use of its funds for his personal benefit. But checks for money the trust owed him might rightly be made out to him. His salary, to the amount of $30,000 during the six years, was thus paid. He was entitled to compensation by the terms of the declaration of trust, and no attack is made upon the amount fixed or the method of fixing it. It is urged, however, that he was during much of the time acting unfaithfully and had forfeited his compensation. This may be true on an accounting between him and

his trust, but it was not the part of the bank to judge of the faithfulness and diligence of Peckham, and to refuse payment of his salary checks if it thought him unworthy. A case of conspiracy between Peckham and the bank to defraud the trust might charge the bank with liability for honoring these salary checks, but not the mere knowledge of transactions by Peckham which might seem questionable.

Peckham received many checks drawn on the Wichita Royalty Company account in payment for oil and gas properties first acquired in his name or for which he advanced the money. He made a personal profit on some of them. These were finally put in the name of the trust, and when Peckham was paid minute statements of each transaction were entered on the records of the trust, and the purchase of the properties reported to the stockholders, though the fact that they were acquired by or through Peckham himself was not. Some of the purchases proved profitable to the trust and some did not. Scannell, secretary and treasurer, was familiar with all the circumstances. In such transactions the trustee was bound to the utmost good faith, he was accountable to the trust for all profits he made in trades for it, and when he sold to it property which he owned the sale was voidable at the option of the trust. But the bank was under no such rule of accountability for such transactions to which it was no party. The purchases by the trustee from himself were not void but voidable. Hammond v. Hopkins, 143 U.S. 224, 12 S. Ct. 418, 36 L.Ed. 134. The bank could not question them. Many of them turned out for the benefit of the trust. Only knowledge of a most barefaced fraud would have justified the bank in refusing to honor a check drawn to Peckham in payment for such property.

Checks drawn on the trust account in favor of the bank itself and by oral direction of Peckham put to his individual credit present a more difficult problem. If the trust owed the bank nothing, the bank should not have received them or should have credited them back to the drawer. Anything the trust owed Peckham should regularly have been paid by check payable to him. That a bank is liable as not having handled the trust account according to duty in crediting to the trustee's individual account checks made payable to the bank itself is held in Robbins v. Passaic Natl. Bank, 109 N.J.L. 250, 160 A. 418, 82 A.L.R. 1368.

The exact facts concerning each of such checks ought to be ascertained in this case.

Thirdly, the liability of the bank for paying to others checks drawn by Peckham on his individual account when the payment was made out of trust funds commingled therein is fully discussed and our views expressed in Atlanta & St. Andrews Bay R. Co. v. Barnes, 5 Cir., 95 F.2d 273. The most recent expression of the Supreme Court of Texas is largely concordant. Quanah, A. & P. Ry. Co. v. Wichita State Bank, 127 Tex. 407, 93 S.W.2d 701, 106 A.L.R. 821. To raise such a liability it is necessary to show that trust funds were in fact misused, and that the bank actually knew it or had knowledge of such facts as to make its actions in bad faith. We do not subscribe to the doctrine that if the bank knew of one act of misconduct of the trustee it became liable for all subsequent misconducts of the account whether it knew of them or acted in bad faith touching them, or not. The bank must use good faith in honoring checks of a customer who is a trustee, but is liable for money diverted from his trust to others only when, to employ the usual phrase, it knowingly assists him to misapply it. Each transaction sought to be thus charged to the bank raises two questions of fact: Was the trustee in this transaction diverting trust money? Did the bank know he was, or did it know facts which support the sole inference that he was? Of course the recurrence of many suspicious transactions may require that inference when a single one would not. A single known misapplication, even in favor of the bank itself, will not as a matter of law require the bank to discontinue the account or to audit the account each time thereafter it pays a check to see whether it may be paying trust money to one who is not known to be a trust creditor. That the bank thus becomes the guardian of the trust is said to be established by Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, L.R.A. 1916F, 1059. We doubt if the case goes so far. It lays emphasis on the facts that the personal account was known then to consist wholly of trust funds and that the transactions were such as to indicate a system of defalcations. In the case of United States F. & G. Co. v. Adoue & Lobit, 104 Tex. 379, 137 S.W. 648, 138 S.W. 383, 37 L.R.A.,N.S., 409, Ann.Cas.1914B, 667, also relied on by the Supreme Court of Texas, the customer cashed a certificate of deposit for $12,000 payable to him as guardian, paid the bank $7,000 on an individual note, and on the

same day checked out the balance in his individual name to his brother. The bank was of course held to restore what it got. What was paid to the brother was virtually part of the same transaction and partook of its color, and the bank was held for that also. In Steere v. Stockyards Natl. Bank, 113 Tex. 387, 256 S.W. 586, 258 S.W. 1042, several times cited, nothing was involved but restoration of what the bank itself took; as is true of Central Natl. Bank v. Connecticut Mutual Ins. Co., 104 U.S. 54, 67, 26 L. Ed. 693. We do not think the rule of liability as a matter of law for all diversions to others accomplished through the checking account after knowledge by the bank of one is well supported. The test continues to be for each transaction actual knowledge and good faith under all the circumstances.

The investment by Peckham of the trust funds in the purchase of his half interest in the Marlborough Addition, not being oil or gas property, in addition to being voidable as a transaction with himself, appears to be beyond the scope of the trust. Scannell, well knowing the facts though he says he did not know the law arising on them, when he became successor trustee did all he could to ratify and adopt and reorganize this transaction, and persisted in it for more than a year. He made the note and indorsement upon which the old bank is now suing. He could waive the presumed fraud in the purchase by Peckham as trustee from himself, but as respects authority to buy town lots for the trust Scannell had no more power to ratify than Peckham had to invest. We do not perceive how the trust, whose scope was apparent from the public records, could be bound for moneys knowingly advanced to this town lot enterprise by the bank, unless Scannell's adoption of it was for the purpose of saving the trust's money already invested in it by Peckham, he being dead insolvent. Perhaps this would have been an authorized business of the trust, just as a National Bank prior to 1916 might take land to save a doubtful obligation though it could not lend on it originally. Unless the facts support some such extraordinary power, it would seem that Scannell has not bound the trust by his signatures in this connection. Whether he has bound himself is another question.

The liabilities of Harrell are similar to but not identical with those of the bank. Whatever he got personally of trust funds as to which he is not a bona fide purchaser without notice he must restore. What he as the bank's agent took for the bank he is responsible for only if he knowingly aided in a diversion. A like rule would apply where he is sought to be held along with the bank for paying Peckham's individual checks out of trust funds.

We decide nothing on the question of limitation. We have not sought to develop all questions of law and we have not attempted to adjudge any question of fact. The facts we leave open for full determination in the District Court, with power in its discretion to hear further evidence where it is thought necessary to reach the truth. The sale of the old bank's assets may stand.

The decree is accordingly reopened except as to the sale of the old bank's assets, and the cause is remanded for further proceedings not inconsistent with this opinion, without costs of appeal allowed to either party.