GENERAL ELECTRIC REALTY CORPORATION v. FIRST NAT. BANK–DETROIT.

No. 14759.

District Court, E. D. Michigan, S. D.
May 5, 1938.

Bulkley, Ledyard, Dickinson & Wright, of Detroit, Mich., for plaintiff.

Robert S. Marx and Lawrence I. Levi, both of Detroit, Mich., for defendant.

LEDERLE, District Judge.

Plaintiff, a corporation organized and existing under the laws of the State of Delaware, is the assignee of the lessor's interest in a certain lease covering premises located in the City of Detroit, and the defendant is the lessee. The lease reserved stipulated rentals and was for a period of 25 years, starting on the 1st day of January, 1928. Defendant First National Bank-Detroit, is an insolvent national banking association.

Plaintiff filed a declaration in the Circuit Court for the County of Wayne setting forth that "on or about May 11, 1933, while said lease was in default by reason of non-payment of rent due thereunder the

defendant became insolvent and a receiver of it was duly appointed, which receiver abandoned and did not assume said lease." And that "on or about June 16th, 1933, the defendant, without fault or cause on the part of the plaintiff, vacated and abandoned said leased premises." And that "the insolvency of the defendant, abandonment of said premises and its failure and refusal to pay the installments of rent as provided for in said lease constituted a breach of the terms, conditions and covenants of said lease."

Attached to the declaration and made a part thereof is Exhibit "B", being a letter dated May 25th, 1934, addressed by counsel for the plaintiff to the First National Bank-Detroit and C. O. Thomas, the then Receiver of the First National Bank-Detroit, in which plaintiff acknowledged the receipt of a notice from the Conservator. of the First National Bank-Detroit, dated April 26, 1933, notifying plaintiff that the defendant Conservator intended to terminate the lease and vacate the premises; which read in part as follows:

"On April 26, 1933, written notice signed by C. O. Thomas, Conservator of the First National Bank-Detroit, was given to the General Electric Realty Corporation stating that pursuant to the powers, duties and responsibilities given or imposed upon him by law that he, said Conservator, did not intend to be bound by any of the terms, conditions, or covenants of said lease and that he was prepared to vacate the premises as soon as it was physically possible to remove the property of the First National Bank-Detroit therefrom.

"Subsequently the First National Bank-Detroit and Mr. C. O. Thomas, as Conservator or Receiver thereof, vacated the leased premises. The General Electric Realty Corporation, as lessor, refuses to recognize a surrender of the lease, and for this reason has not re-entered or re-leased the premises. It now appears, however, that there is little or no chance of the First National Bank-Detroit reorganizing and continuing in business and it seems advisable for the General Electric Realty Corporation, without waiving any of its rights under the lease or without waiving any of its rights by reason of your repudiation or breach thereof, and without recognition of any surrender thereof, to take possession of the premises and endeavor to relet them for the sole purposes of mitigating damages."

It thus appears from the face of the declaration that the plaintiff has alleged that on or about May 11th, 1933, the defendant became insolvent and a Receiver for it was appointed and the Receiver elected to abandon the lease, and on or about June 16th, 1933, the Receiver, while in charge of the affairs of the bank, vacated and abandoned the leased premises. That on May 25th, 1934, the plaintiff decided that the First National Bank-Detroit was not likely to be reorganized. The plaintiff's declaration is based upon the insolvency of the defendant and the abandonment of the premises by the Receiver and the failure of the Receiver to pay the rent reserved.

Proceedings were instituted by B. C. Schram, present Receiver for the First National Bank-Detroit, to remove the case to this court upon the ground, among others, that it involved the winding up of the affairs of a national bank (Title 28, § 41, subsec. 16, U.S.C., 28 U.S.C.A. § 41 (16). Subsequently the plaintiff entered a special appearance in this Court and filed a motion to remand, which motion is now before the Court. No question is raised as to the regularity of the proceedings for removal, and whether this court has jurisdiction depends upon whether this suit could have been originally brought in the Federal Court. Title 28, § 71, U.S.C., 28 U.S.C.A. § 71.

Plaintiff relies principally on the recent decision of Connolly v. First National Bank, 6 Cir., 86 F.2d 683. It appears, however, that the case of Connolly v. First National Bank, supra, is clearly distinguishable from the case at bar. The declaration filed in the case of Connolly v. First National Bank, supra, set forth a cause of action which accrued more than three years prior to the appointment of the Receiver. There is nothing in the declaration with reference to the appointment of a Receiver, and the cause of action does not depend in any way upon the action of the Receiver or the failure of the Receiver to act. If the plaintiff in that case was entitled to recover, it was because of actions taken by the corporation before the Receiver was appointed. The Court would have to go outside of the declaration to find that the bank was insolvent or that a receiver had been appointed; and as the Court stated (page 685): "It is too clear for doubt that the averments of the declaration bear no analogy to a case for 'winding up the affairs of the bank.'" In the instant

case, however, the entire claim of the plaintiff is based upon the actions of the Receiver, and the declaration clearly shows that the bank had ceased to function as a banking association at the time the right of action accrued.

After the appointment of a Receiver for an insolvent national bank, the former officers and directors of said institution not only have no further authority or power to act for the bank but are specifically enjoined from so doing. In fact the declaration does not allege that the officers of the bank failed to perform any obligations arising in connection with the lease, but the declaration alleges that the Receiver acted in such a manner as to give the plaintiff this right of action.

■ At the time the cause of action set forth in the declaration arose, all the powers, duties and authority of the Board of Directors were vested in the Receiver appointed by the Comptroller of the Currency. U. S. v. Weitzel, 246 U.S. 533, 543, 38 S.Ct. 381, 62 L.Ed. 872; Hazen v. Hardee, 64 App.D.C. 346, 78 F.2d 230, 232; O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146, 148; Brown v. Schleier, 8 Cir., 118 F. 981, 986; Port Newark Nat. Bank, v. Waldron, 3 Cir., 46 F.2d 296.

Under the mandate of Congress he had no alternative but to proceed to wind up the affairs of the bank. Title 12, § 191, U.S.C., 12 U.S.C.A. § 191.

■ In connection with the winding up of the affairs of the bank, the Receiver elected to abandon the premises covered by the lease and thereby reduce the cost of the operation of the receivership. The term "winding up the affairs of a national bank" is a broad one, and should be construed so as to carry out its true intent. The history of this law may be found in an exhaustive opinion filed by Mr. Justice McDermott, in Lawrence National Bank v. Rice, 10 Cir., 83 F.2d 642, which opinion refers to the earlier decision in the Eighth Circuit of Guarantee Company of North Dakota v. Hanway, 104 F. 369.

This is clearly a case of winding up the affairs of a national banking association (Title 28, § 41, subsec. 16, U.S.C., 28 U.S. C.A. § 41 (16), and the jurisdiction of this court is no longer open to question, but is settled by the decision of the United States Supreme Court, International Trust Company v. John W. Weeks, 203 U.S. 364, 27 S.Ct. 69, 51 L.Ed. 224.

Other cases in point are: Studebaker Corporation of America v. First National Bank, D.C., 10 F.2d 590; Larabee Flour Mills v. First National Bank, 8 Cir., 13 F. 2d 330; Id., 273 U.S. 727, 47 S.Ct. 238, 71 L.Ed. 861; Fleming v. Gamble, 10 Cir., 37 F.2d 72; Bell v. Kelly, D.C., 54 F.2d 395; City National Bank of Wichita Falls et al. v. Wichita Royalty Co., D.C., 18 F. Supp. 609; Bank of America Nat. Trust & Savings Ass'n v. United States Nat. Bank, D.C., 3 F.Supp. 990; Wyman v. Wallace, 201 U.S. 230, 26 S.Ct. 495, 50 L.Ed. 738; George v. Wallace, 8 Cir., 135 F. 286; Citizens' Nat. Bank of Wexahachie v. Citizens' Nat. Bank of Wexahachie, D.C., 9 F.Supp. 513; Pearson v. Brennan, 1 Cir., 75 F.2d 958; Fash, School District Treasurer, et al. v. First Nat. Bank of Alva, Okl., 10 Cir., 89 F.2d 110; Crum v. Patterson, 3 Cir., 64 F.2d 263.

It appears that in Denton v. Baker, 9 Cir., 79 F. 189; Speckert v. German National Bank, 6 Cir., 98 F. 151; Bailen v. Deitrick, 1 Cir., 84 F.2d 375; Moulton v. National Farmers' Bank of Owatonna, Minn., D.C., 27 F.2d 403; Barons v. First National Bank of Plainville, Kansas, D.C., 28 F.2d 615; City of Corbin v. Varden, D.C., 18 F.Supp. 531; Earle v. Commonwealth of Pennsylvania, 178 U.S. 449, 20 S.Ct. 915, 44 L.Ed. 1146; Wichita National Bank v. Smith, 8 Cir., 72 F. 568; Gableman v. Peoria, Decatur & Evansville Railway Company, 179 U.S. 335, 21 S.Ct. 171, 45 L.Ed. 220; Neely v. Planters' National Bank, D.C., 48 F.2d 266, the courts have held as in the Connolly Case that the motion to remand should be granted, but a careful reading of these cases will disclose that, as in the Connolly Case, it does not appear from the pleadings that the cases arose in connection with "winding up the affairs of a national bank."

It therefore follows that the motion to remand must be overruled.