MAR–SON, INC., a North Dakota Corporation, Plaintiff and Appellant,

v.

TERWAHO ENTERPRISES, INC., a North Dakota Corporation, Defendant and Appellee.

Civ. No. 9337.

Supreme Court of North Dakota.

Oct. 26, 1977.

Pringle & Herigstad, Minot, for plaintiff and appellant; argued by Jan M. Sebby, Minot.

Anderson, Tossett & Berning, Minot, for defendant and appellee; argued by Collin P. Dobrovolny, Minot.

PEDERSON, Justice.

This is an appeal by MAR–SON, Inc., from a judgment entered by the district court of Ward County after a trial without a jury. The court below found that MAR–SON, a landlord, was entitled to judgment against its former tenant, Terwaho, for accrued rent, but limited the amount of the judgment when it found that MAR–SON lacked good faith in attempting to mitigate damages. The judgment is affirmed.

In July, 1973 MAR–SON and Terwaho entered into a five-year written lease of premises to be used as a grocery store. The lease provided for a minimum annual rental of $21,000, and for additional rental sums, based upon sales volume, not here relevant. In June of 1975 Terwaho notified MAR–SON that it was terminating its grocery business in the leased building and requested a release of its obligations under the lease. At the same time Terwaho asked for permission to sublet to S & L of Minot, Inc., a corporation consisting of Terwaho employees who were interested in purchasing the business. MAR–SON denied permission to sublet, but itself entered into a five-year lease with S & L, explicitly preserving its rights against Terwaho under the 1973 lease. In January of 1976 S & L was adjudicated a bankrupt and defaulted on its lease. After the bankruptcy was concluded, MAR–SON again attempted to lease the premises, eventually listing it with a realtor on May 26, 1976. The listing agreement stated a desired annual rent of $33,600.

The court below found, upon undisputed evidence, that on July 7, 1975, Terwaho offered to surrender the 1973 lease. The court found that the 1973 lease contained provisions on remedies and forfeiture. MAR–SON was entitled, under these provisions, to reenter and repossess the premises and obtain a new tenant at the expense of the old tenant, with any deficiency between the old and new rent to be paid by the old tenant. The court found that the landlord's reentry would not terminate the 1973 lease and that the tenant's obligation would continue for the full term.

The court made the following conclusions of law, among others:

"3. Landlord in 1975 stepped in and re-let to another, S.L. And in that way, the damages owing by tenant to landlord for rent accruing under the 1973 lease were mitigated so long as the new tenant performed under the 1975 lease.

"4. When the new tenant, S.L., ceased performance, landlord having previously stepped in and relet once, was obligated and under a duty to seek another tenant, and so mitigate future damages."

We note these conclusions not because we disagree with them but because this Court has heretofore not decided the landlord's duties upon his tenant's default, and because the trial court's conclusions do not specifically indicate when a duty to mitigate damages arises.

Other courts have divided on the question of a landlord's duty to mitigate damages.[1] Our sister states of Iowa [*Friedman v. Colonial Oil Co.*, 236 Iowa 140, 18 N.W.2d 196 (1945)], Nebraska [*Bernstein v. Seglin*, 184 Neb. 673, 171 N.W.2d 247 (1969)], and Wisconsin [*St. Regis Apartment Corp. v. Sweitzer*, 32 Wis.2d 426, 145 N.W.2d 711 (1966)] have held that a duty exists. Minnesota adheres to the position that there is no duty to mitigate. *Gruman v. Investors Diversified Services*, 247 Minn. 502, 78 N.W.2d 377 (1956). In *Gruman* the Minnesota court briefly examined the two positions but felt compelled to adhere to the (no mitigation) rule because "many leases now in effect covering a substantial amount of real property and creating valuable property rights were carefully prepared by competent counsel in reliance upon the [no mitigation] viewpoint." 78 N.W.2d at 381.

The position that there is no duty to mitigate generally proceeds from the theory that a lease creates an estate in land and the lessee thus becomes the owner of the premises for the term of the lease. *Gruman, supra*. Under this theory the lessor need not concern himself with the lessee's abandonment of the lessee's own property.

The position that a duty arises in the landlord to mitigate damages when a tenant quits the premises has two primary bases. One is the contention that public policy demands that the property be put to some beneficial use. *Martin v. Siegley*, 123 Wash. 683, 212 P. 1057 (1923). The second contention is that a modern lease is more like a continuing contractual obligation than the purchase of an estate and that, therefore, the familiar contract remedies are applicable. *Wright v. Baumann*, 239 Or. 410, 398 P.2d 119 (1965). The Oregon Supreme Court explained that:

> ". . . a modern business lease is predominantly an exchange of promises and only incidentally a sale of a part of the lessor's interest in the land.

.    .    .    .    .

"It does not seem that the burden imposed upon a lessor in mitigating damages would ordinarily be any greater than that imposed upon promisees of contracts not relating to the occupancy of land." *Wright v. Baumann*, 398 P.2d 120, 121, *supra*.

■ We hold that the landlord has a duty to mitigate the damages which arise out of his tenant's default. While we agree that the general welfare is served more by the use of property than by its idleness, we are persuaded that the contract qualities of a five-year lease are sufficient to require the use of contract remedies and limitations to those remedies. We may not reach the same conclusion when the lease term is for 99 years.

■ The doctrine of avoidable consequences is a familiar contract principle [*Stetson v. Investors Oil, Inc.*, 140 N.W.2d 349 (N.D.1966); *Schneidt v. Absey Motors, Inc.*, 248 N.W.2d 792 (N.D.1976)] very pertinent to a situation such as that before the Court. That doctrine, copied from a Nebraska case, states that where two parties have made a contract which one of them has broken, the other must make reasonable exertions to render his injury as light as possible, and he cannot recover from the party breaking the contract, damages which would have been avoided had he performed such duty. *Nicola v. Meisner*, 84 N.W.2d 702 (N.D.1957).

Though the parties have used the term "mitigation" of damages, we believe that the cases which have used the term "minimization" may be more appropriate in a discussion of the doctrine of avoidable consequences. See *Schneidt v. Absey Motors, Inc., supra*. We have previously equated the doctrine of avoidable consequences with the duty to minimize damages. *Stetson v. Investors Oil, Inc., supra*, at 358. Landlords owe their tenants a duty to minimize the damages occasioned by a tenant's breach of a lease.

The duty to minimize damages falls upon the landlord but it is for the benefit of the

1. See generally, Annotation Damages—Mitigation by Landlord, 21 A.L.R.3d 534.

tenant that the landlord's efforts must be made. See *Manley v. Kellar*, 8 Terry 511, 47 Del. 511, 94 A.2d 219 (1952). The concept of harm posited by MAR–SON in its argument ignores this rule. Terwaho did do harm to MAR–SON in the breach of the lease. MAR–SON initially responded, as was its *duty*, in efforts to relet, which minimized damages. Following the default of S & L, MAR–SON again attempted to secure a grocer tenant. This effort, though unsuccessful, was held to be a good faith effort to minimize damages. In fact, all efforts made by MAR–SON up until May 26, 1976, were held to be in good faith and Terwaho has admitted its liability up to that date.

MAR–SON has asserted that this Court must choose between holding that (1) businessmen are entitled to rely upon the contracts they make, or (2) by inference a good lawyer is one who can, with immunity, break a lease. If that is our choice, we choose to hold that businessmen may safely rely upon their contracts. MAR–SON could and did rely upon its lease and the trial court has enforced that lease. The lease has not been broken with immunity. The trial court has ordered Terwaho to respond in damages for its breach of the lease. By its own action MAR–SON limited Terwaho's obligation to pay rent, an obligation which the trial court ordered enforced but only for the period of time that MAR–SON continued in "a good faith effort to mitigate damages."

The trial court held that the duty to minimize damages could be fulfilled by a good faith reletting or attempt at reletting. The standard to be applied has been described as calling for "reasonable diligence" (*Anderson v. Andy Darling Pontiac*, 257 Wis. 371, 43 N.W.2d 362 (1950); *Friedman v. Colonial Oil Company, supra* ), for "reasonable effort" [*Wright v. Baumann, supra; Gordon v. Consolidated Sun Ray, Inc.*, 195 Kan. 341, 404 P.2d 949 (1965)], and for various other descriptions of effort.[2]

We hold that the trial court's determination that "a good faith effort to mitigate damages" must be made is consistent with the standards of reasonable effort or reasonable diligence.

■■■■ Although termed by the trial court a conclusion of law, the trial court's statement that "placing the premises up for lease on May 26, 1976 at $12,600 a year or more, over what [MAR–SON] had been receiving previously cannot, under the circumstances of this case be considered a good faith effort to mitigate damages," was a finding of fact. In determining whether findings are of fact or of law, the label placed thereon by the trial court is not conclusive. *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972).

We will not set aside findings of fact unless clearly erroneous. Rule 52(a), NDRCivP. We have said that a finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973).

■■■■ The findings of the trial court indicate that the very substantial increase in rent could not be considered a good faith effort to mitigate damages. MAR–SON argues that it is improper to reach this conclusion simply because the property was *listed* for rent at the higher figure. If seeking a higher rent inhibits the re-rental of the premises, it cannot be found to be in good faith. There was testimony which showed that the higher rent figure was firm and did deter the re-rental. It was thus not clearly erroneous for the trial court to find that the failure to obtain a new· tenant was due in part to an increase in rental.

Several cases from other jurisdictions indicate that an increase in sought-after rental may violate the landlord's duty to minimize damages and presents a question of fact. See, i. e., *Weeks v. International Trust Co.*, 125 F. 370 (1st Cir. 1903), *error dismissed for want of jurisdiction*, 193 U.S. 667, 24 S.Ct. 853, 48 L.Ed. 839 (1904); *Inter-*

2. For a definitive listing, see the Annotation at 21 A.L.R.3d 534, Sec. 11.

national Trust Co. v. Weeks, 139 F. 5 (1st Cir. 1905), affirmed, 203 U.S. 364, 27 S.Ct. 69, 51 L.Ed. 224 (1906); Benson v. Iowa Bake-Rite Co., 207 Iowa 410, 221 N.W. 464 (1928). The trial court properly used the evidence of the listing agreement as showing an intention on the.part of the landlord to seek a higher rent. The court thereupon determined that this intention ended the landlord's previous good faith efforts to minimize damages. We are not left with a "definite and firm conviction that a mistake has been made." In re Estate of Elmer, supra. The appellant has cited us to no case law which would demand such a conclusion and independent research has found none.

MAR–SON has devoted much argument to the assertion that the trial court erroneously placed the "burden of mitigation" on the landlord. While it is difficult to ascertain exactly what is meant by "burden of mitigation," we have examined the record available to determine if the twin trial burdens of going forward with evidence and of persuasion were properly placed and met.

 The duty to minimize damage is met by a "good faith effort to mitigate damages." In the absence of any assertion or showing to the contrary, the good faith of MAR–SON will be presumed. The burden of showing a lack of good faith effort on the part of MAR–SON is necessarily upon Terwaho. The question then is: Did Terwaho meet that burden?

The pleadings make clear the fact that Terwaho has raised this issue. The fifth defense asserted is a lack of due diligence in locating another tenant for the building. The sixth defense asserted is the unreasonableness of restricting the building's use to that of a grocery store. It is likewise clear that Terwaho met its burden of going forward with evidence which tended to show a lack of good faith on MAR–SON's part. It is of no consequence that much of this evidence came through the cross-examination of MAR–SON's own witnesses.

Nothing in the record indicates that the trial court placed a burden upon MAR–SON of demonstrating good faith. MAR–SON has not pointed us to any such indication and the trial court, in conclusion of law number 4, states that the "defendant has satisfied this burden of proof on the defense of failure of plaintiff to mitigate in good faith . . . ." We will affirm the trial court's findings of fact unless they are clearly erroneous. Rule 52(a), NDRCivP. As we have earlier said, the findings are not clearly erroneous.

The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.