Vernon LITHUN, Plaintiff and
Appellant,

v.

GRAND FORKS PUBLIC SCHOOL
DISTRICT NO. 1, Defendant
and Appellee.

Civ. No. 9847.

Supreme Court of North Dakota.

June 25, 1981.

As Modified on Denial of Rehearing
Sept. 1, 1981.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Shaft, McConn, Fisher & Thune, Grand Forks, for defendant and appellee; argued by Gary R. Thune, Grand Forks.

VANDE WALLE, Justice.

Vernon Lithun appealed from a judgment of the district court of Grand Forks County dismissing his complaint alleging breach of contract against Grand Forks Public School District No. 1 (hereinafter "School District"). We affirm.

Lithun was employed by the School District for several years, including the 1979–1980 school year. Lithun received a letter dated November 14, 1979, from the Grand Forks School Board (hereinafter "School

Board") informing him that his dismissal was being contemplated, that a special meeting was to be held prior to the final decision of the School Board, and that he had a right to be present and contest the contemplated dismissal. Lithun received another letter dated November 19, 1979, informing him that the contemplated dismissal was for the reasons of "insubordination or gross inefficiency" and stating that he had failed to observe the policy and procedure of the School District set forth in Policy No. 5144. The letter alleged specific violations as follows:

"1) 1976–77: Pulled hair and slapped [a student] in Typing class at Valley Junior High School;

"2) 1977–78: Pulled hair and slapped [a student] in hallway at Valley Junior High School on March 28, 1978;

"3) 1977–78: Pulled hair and struck [a student] several times with a belt, while holding him on floor, at Valley Junior High School on March 29, 1978;

"4) 1979–80: Pulled hair from head of [a student] at South Junior High School on September 25, 1979;

"5) 1979–80: Slapped [a student] in the face during General Business class at South Junior High School on October 26, 1979."

A hearing was held before the School Board as specified in Section 15–47–38(2), N.D.C.C.[1] Following the hearing the School Board approved a motion that the charges specified had been sustained and not refuted and immediately discharging Lithun from his teaching position. Lithun subsequently brought an action against the School Board alleging that he was improperly terminated and asking for a judgment immediately restoring him to his teaching position as well as damages in the sum of $125,000. During the course of the proceedings in the trial court, that court issued three memorandum decisions. The first memorandum decision was issued after a hearing on an order to show cause sought by Lithun and directed to the School Board in which Lithun requested that the School Board be enjoined from refusing to permit him to teach during the pendency of the action and that the School Board be further enjoined from engaging any other person to fulfill Lithun's contract with the School District or transferring any other teacher within the system to perform those duties. The trial court denied Lithun's request for temporary reinstatement but, because he might "possibly be reinstated after the full trial of this matter," enjoined the School District from permanently filling or eliminating Lithun's position until the final outcome, at the district court level, of the action.

The trial court's second memorandum decision was issued after a motion for summary judgment brought by the School District. In that memorandum decision the trial court denied the motion for summary judg-

---

1. Section 15–47–38(2), N.D.C.C., provides, in part:

"2. The school board of any school district contemplating discharging a teacher for cause prior to the expiration of the term of the teacher's contract shall notify such teacher in writing of such fact at least ten days prior to the date of contemplated discharge. Such teacher shall be informed in writing of the time and place for a special meeting of the school board to be held for such purpose prior to the final decision on the matter. Such teacher shall also be informed in writing of his right to demand a specification of the reasons for such discharge which must on demand of the teacher be furnished not less than five days prior to said meeting to be held on the question of contemplated discharge. Such reasons shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary. At the meeting with the board, if the teacher has informed the board in writing at least two days prior thereto that he will contest the charges brought against him, the board must sustain the charges with evidence produced at such hearing with witnesses who shall be subject to cross-examination by the teacher or his representative. The teacher may then produce such witnesses as may be necessary to refute the charges, which witnesses shall be subject to cross-examination. The proceedings may, at the request of either party, be transcribed by a court reporter at the expense of the person requesting such transcript ...."

ment, determined that the matter should be tried to the court rather than a jury which had been timely demanded, and further determined that the burden of proof was upon the School District to prove, by a fair preponderance of the evidence, that it had justifiable cause for Lithun's dismissal. In the third memorandum decision, following the trial, the trial court found that Lithun's termination was justifiable for reasons of insubordination which it defined as "unjustified refusal to obey reasonable rules promulgated by the school authorities" and dismissed the complaint and dissolved the injunction against the School District. Following the entry of judgment Lithun filed this appeal.

Lithun has presented 14 issues to us for review. Some of the issues are interrelated and will be considered together.

I

Lithun phrases his first issue as follows: "In an action for breach of a teacher's contract with a school district is the teacher entitled to a jury trial where the teacher couples his prayer for damages with a request for reinstatement?"

The trial court denied Lithun's request for a jury trial because it determined that the action sought primarily equitable relief (injunction and reinstatement to the teaching position) and that the right to damages was merely incidental to and dependent upon the right to the equitable relief. Lithun concedes that an action in equity is not triable to a jury. See, e. g., *Bolyea v. First Presbyterian Church of Wilton, N. D.*, 196 N.W.2d 149 (N.D.1972).

In *Dobervich v. Cent. Cass Pub. Sch. Dist. No. 17*, 283 N.W.2d 187 (N.D.1979), we held that where both damages and an injunction are sought, parties are entitled to a jury

trial as to the damages claim unless the damages claim is merely incidental to and dependent upon the right to an injunction. In *Baker v. Minot Public School Dist. No. 1*, 253 N.W.2d 444 (N.D.1977), this court, in considering the proper remedy in those situations in which a school board's decision to not renew a teacher's contract did not conform to the procedural and substantive requirements of the statute, held that the failure to grant equitable relief, such as reinstatement of the teacher, "would thwart the protection of the very interests our Legislature has sought to protect." 253 N.W.2d at 451. In that decision the court considered the rule that personal service contracts generally are not specifically enforceable but noted that equity is not inflexible and the power of a court to grant such a remedy depends upon the factual situation involved and the need for a given remedy in a particular case.[2]

It is apparent that the equitable remedy of reinstatement is even more applicable in a situation in which a teacher is terminated during the term of the contract than it is in those instances in which a school board improperly fails to renew a teacher's contract for the ensuing school year. Lithun did ask for reinstatement and sought an order from the trial court requiring the School Board to reinstate him during the time the action was pending. Although the trial court refused to reinstate him, it did restrain the School Board from permanently filling his position or dissolving his position during the time the action was pending. Thus, had Lithun been successful in his action, it is apparent that the trial court would have ordered the School District to reinstate him in his teaching position. Any damages that might have been awarded would have been incidental

2. This concept was not abandoned in *Samuels v. White Shield Public Sch. Dist.*, 297 N.W.2d 421 (N.D.1980), in which we set aside a summary judgment of the trial court in an action by the teacher for improper nonrenewal. In *Samuels* the teacher sought only damages in his complaint and made no plea for equitable relief such as reinstatement. The trial court, relying on *Dobervich v. Cent. Cass Pub. Sch. Dist. No.* 17, 283 N.W.2d 187 (N.D.1979), granted the school district's motion for summary judgment, holding that because Samuels had failed to request the equitable relief of reinstatement he was precluded from bringing an action for damages. We held that the decision in *Dobervich* did not foreclose a teacher's right to bring an action for damages for wrongful nonrenewal in the absence of a request for reinstatement.

to that relief. Merely because there were factual issues to be determined does not, of itself, entitle Lithun to a jury trial. As this court noted many years ago:

> " 'It has always been the province of the court in equity to determine issues of fact as well as of law; and, while the court may submit questions of fact to the jury, this is purely a matter of discretion, and the verdict in such cases is merely advisory.' " *Gresens v. Martin,* 27 N.D. 231, 145 N.W. 823, 824 (1914), quoting 24 Cyc. 111.

■ Pointing to the decision in *Seher v. Woodland School District No. 26,* 79 N.D. 818, 59 N.W.2d 805 (1953), Lithun argues that he clearly has the right to a jury trial. In that case the teacher brought an action for breach of contract for which he was awarded damages by the trial court. The primary issue in that case was not, however, whether or not the teacher had a right to a trial by jury—a jury trial having been waived by stipulation of the parties—rather, the issues centered on the right of the teacher to bring an action for damages without having exhausted any administrative appeal that might have been available to him and whether or not the school board's decision that it had cause for dismissal was controlling upon the courts. *Seher* is distinguishable upon its facts. First, there is no indication that the teacher sought any remedy other than damages. Second, *Seher* was decided prior to the enactment of what is now codified as Section 15–47–38(2), N.D.C.C., specifying the proce-

dures to be followed in terminating a teacher's contract, and prior to this court's decision in *Baker v. Minot Public School Dist. No. 1, supra,* construing that section as requiring equitable relief where necessary to prevent the interests the Legislature sought to protect from being thwarted.

Because Lithun sought equitable relief which the trial court did, in part, order, which relief held his position open for his reinstatement until the action was tried, and because it is apparent that the equitable relief sought was primary and not incidental to the prayer for damages,[3] we conclude that the trial court properly denied Lithun's demand for a jury trial on the factual issues.[4]

## II

■ Lithun's next issue concerns alleged errors by the trial court in permitting the introduction of certain evidence. That evidence consisted of the transcript of the School Board hearing and the oral and written opinions of two officers concerning their investigation of the incident involving the striking of a student with a belt in 1977–1978.

Lithun himself introduced as evidence the transcript of the hearing before the School Board but argues it was introduced not as substantive evidence but merely for the purpose of determining if adequate cause appeared at the School Board meeting to

---

3. Lithun refers us to this court's decision in *Landers v. Goetz,* 264 N.W.2d 459 (N.D.1978), for the proposition that a difficult decision arises as to whether or not a jury trial is required upon demand in those instances in which the pleadings seek relief which is partly legal and partly equitable. In *Landers* this court held that a jury trial was warranted under the facts of that case but a review of those facts, including the number of parties, the number of actions, and the various claims and counterclaims indicates that the relief sought in at least some of the claims was strictly for money damages. In this instance the claim for money damages is incidental. As the School District has argued in its brief, Lithun made no plea for any special damages and evidence concerning special damages was not admitted by the trial court. See Rule 9(g), N.D.R.Civ.P. The amount remaining to be paid on his con-

tract with the School District at the time of Lithun's dismissal was some $10,361.75 according to his testimony, and it is difficult to determine that Lithun could have proved he was entitled to $125,000 in damages. See *Vallejo v. Jamestown College,* 244 N.W.2d 753 (N.D. 1976). The School Board argues that this is further evidence that the relief sought by Lithun was primarily reinstatement rather than damages.

4. Under Rule 39(c), N.D.R.Civ.P., the trial court could have used an advisory jury on the factual issues. Lithun's argument is based on his demand for a jury as a matter of right, however, and the use of an advisory jury in the discretion of the trial court is not the issue in this matter.

merit its action in dismissing Lithun. The court in admitting the transcript into evidence indicated the "clearly inadmissible testimony in the transcript will not be considered by the Court." The trial court, in its pretrial order, indicated the transcript would be admissible under Rule 803(24), N.D.R.Ev. This provision, an exception to the hearsay rule, permits the introduction of statements not specifically covered by the other exceptions to the rule if the statements have equivalent circumstantial guarantees of trustworthiness and if the court determines that the following factors are present: (a) the statements must be offered as evidence of a material fact; (b) the statements must be more probative on the point for which they are offered than any other evidence which the proponent can procure through reasonable efforts; and (c) the interests of justice will best be served by admission of the statements into evidence. The trial court determined that all three requirements were met. Lithun argues that the testimony of certain witnesses contained in the transcript could have been procured directly and therefore the transcript was not more probative than their direct testimony would have been in the trial court. The trial judge indicated he believed the testimony, which was given under oath and subject to cross-examination, was more probative because it was taken nearer to the event than any testimony which could be offered at trial.

We have indicated that the introduction of allegedly inadmissible evidence in a nonjury case is rarely reversible error. See, e. g., *Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417 (N.D.1979). In *Schuh v. Allery,* 210 N.W.2d 96 (N.D.1973), this court cited with approval the decision in *Builders Steel Co. v. Commissioner of Internal Rev.,* 179 F.2d 377 (8th Cir. 1950), holding that an appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence unless all the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. Lithun has failed to point to any finding made by the trial court which rests upon the testimony of witnesses contained in the transcript of the School Board hearing who did not also testify at trial. In view of the trial court's statement that clearly inadmissible testimony in the transcript would not be considered, the lack of any indication that the trial court did rely upon such testimony in reaching its decision, and the other competent evidence to support the decision, we conclude there was no error in admitting the transcript of the testimony of the hearing before the School Board.

■ Two witnesses testified as to one of the incidents alleged as grounds for dismissal by the Board. During their testimony a letter was introduced as an exhibit. The letter was addressed to a police officer by the supervisor of child-protection services at the Grand Forks Social Service Center and Lithun contends the letter contains conclusions reached after interviews with other persons. After objection by counsel for Lithun the trial court struck from the record the testimony given by the supervisor of child-protection services which included statements made to her by the student but admitted the remainder of her testimony and the letter. The testimony of the supervisor of child-protection services indicates her conclusions were based upon an investigation which included medical reports; a report from the Grand Forks police department that Lithun and a student had a physical fight resulting in bruises to the student's body; statements by the student; and statements by Lithun. The letter was a form report which indicated, by the marking of the appropriate line on the form, that "an investigation has been conducted and was found to be substantiated." At the bottom of the form, in handwriting, are the words: "Mitch, we are not doing anything further on this. We are concerned as to whether or not this teacher will again lose control and bruise another child." In its memorandum decision after trial, the trial court, in its summation of the facts involving notice of expected conduct, which Li-

thun alleges he did not receive, referred to the testimony of these two witnesses as well as to the letter.

Relying on *Fuhrman v. Fuhrman*, 254 N.W.2d 97 (N.D.1977), Lithun contends the testimony and letter of these two witnesses should not have been admitted and that it was error to do so. In *Fuhrman* this court held that a report of a social worker which includes statements of persons other than the social worker, not in court and not under oath, is hearsay, and if the admission of inadmissible hearsay evidence induced the trial court to make an essential finding it would otherwise not have made, such admission is reversible error. Lithun was, of course, in court and did testify. The statements of the students were stricken by the trial court. Thus only the statements from the police department and the physician can be considered as hearsay. More important, however, it is apparent to us that the court did not rely on this testimony or the letter to make an essential finding it would not otherwise have made. In *Fuhrman* this court recognized the rule established in *Schuh v. Allery, supra*, that rarely will the introduction of allegedly inadmissible evidence in a nonjury case be reversible error. In *Fuhrman* the court analyzed the evidence and concluded that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. Here, the trial court, in referring to the disputed evidence, was summarizing the evidence involving the issue of whether or not Lithun was put on notice of conduct expected of him in disciplining students. There is, as we shall discuss later, ample evidence concerning Lithun's actions and, contrary to this court's review of the evidence in *Fuhrman*, it does not appear that the incompetent evidence induced the trial court to make an essential finding which would not otherwise have been made.

### III

■ Lithun's next group of issues concerns the determination of a standard of conduct by which teachers are to be guided.

Lithun's primary argument in this regard in that Policy No. 5144, to which the School District referred in its letter notifying him of his contemplated dismissal, was not publicized to the teachers and, in itself, is vague. The policy contains the following statements:

"The following guides to good discipline are recommended:

"1. . . .

"2. . . .

"3. Corporal punishment, when necessary, should only be administered with the approval and under the supervision of the principal . . . ."

Were this a matter involving a situation in which a teacher, for the first time, administered physical punishment without having first secured the approval of the principal, we would agree with Lithun that it would not be a basis for a charge of insubordination or gross inefficiency. If teachers are to be dismissed for violating the terms of a school policy, to ask whether or not the policy must be written in clear and unambiguous terms is to ask a rhetorical question. The policy in this instance refers to guidelines, not absolute requirements, for the teacher. But the policy is only a small part of the evidence introduced in this matter. Although there is a dispute as to some of the facts—to which we apply Rule 52(a), N.D.R.Civ.P.—it is apparent from the record that after the first instances involving Lithun's use of physical punishment he was instructed to not administer such punishment except with the approval of and in the presence of the principal of the building in which he was teaching. Thus, whatever the policy of the School Board and its dissemination might be with regard to other teachers in the Grand Forks school system, it is clear that Lithun had been instructed not once but on several occasions to not administer physical punishment except in accordance with the policy. This instruction could only mean that Lithun was to secure the approval of his principal in order to administer physical punishment. When he continued to use physical punishment without securing such prior approval he was insubordinate.

■ Lithun refers us to Section 12.1–05–05(1), N.D.C.C.,[5] and urges that we construe this as a grant of authority by the Legislature to the teacher which cannot be abrogated by the School Board. We do not agree. Section 12.1–05–05(1) establishes a defense available to a teacher in a criminal action brought against the teacher for use of force against a student. It does not abrogate the provisions of Section 15–29–08(13), N.D.C.C., giving to school boards the authority:

"13. To adopt, alter, and repeal, when it deems it expedient, rules and regulations for the reception, organization, grading, government, and instruction of pupils, . . ."

The wisdom of a school board policy which allows or prohibits physical force in the disciplining of students or a policy which permits the use of such force by one teacher and not another, is not for this court to decide. The authority to adopt such policies has been vested by the Legislature in the school boards of the school districts of this State.

■ Lithun also questions the meaning of the term "corporal punishment" as that term is used in the School Board policy. According to Webster's New World Dictionary, Second College Edition, that term is defined as: "punishment inflicted directly on the body, as flogging: now usually distinguished from capital punishment, imprisonment, etc." If Lithun was confused as to the meaning of that term, that confusion should have been corrected when he was told, by one of the school administrators, to keep his "hands off the kids" and not to slap the students. We might agree with Lithun that, for the protection of the teacher, a school board policy which attempts to

place limits on the use of "physical punishment" by a teacher in disciplining students should clearly define what is meant by the use of that term, i. e., as an example, any touching of the student, a tug on the arm, or greater physical force. It may, of course, be impossible to formulate a policy with the clarity and preciseness Lithun now insists should adhere to the School Board's policy. Whatever the situation might be with regard to a teacher who faces dismissal for an alleged violation of a vague policy and who had received no further direct clarifications of that policy from the school administration, this is not such a case. After a series of situations in which physical force was used by Lithun, the policy, as to him, was that he was to keep his hands off the students. The trial court found as a fact that Lithun had been so informed.

■ Lithun also argues that a policy which restricts him from using physical force to discipline a student without first having secured the approval of the administration violates his academic freedom. He urges that he should be left to handle his own classroom, except to the extent that there may be a violation of laws enacted by the Legislature, so that he can teach, rather than having a standard imposed by the School Board, whose members may not have any professional training in teaching. This is a rather novel argument in that academic freedom most often arises with regard to course content rather than to discipline in the classroom. However, the Legislature has spoken with regard to this matter. It has, as we have previously noted, vested the authority to govern and discipline students in the school boards of the various districts of the State. See Sec. 15–29–08(13), N.D.C.C. School boards may determine that a teacher should be left to

**5.** Section 12.1–05–05, N.D.C.C., sets forth circumstances under which the use of force upon another person is justified, including:

"1. A parent, guardian, or other person responsible for the care and supervision of a minor, or teacher, or other person responsible for the care and supervision of such a minor for a special purpose, or a person acting at the direction of any of the foregoing persons, may use reasonable force upon the

minor for the purpose of safeguarding or promoting his welfare, including prevention and punishment of his misconduct, and the maintenance of proper discipline. The force may be used for this purpose, whether or not it is 'necessary' as required by subsection 1 of section 12.1–05–07. The force used must not create a substantial risk of death, serious bodily injury, disfigurement, or gross degradation."

deal with discipline in his classroom. In this instance, because of past experiences, the School Board determined that it should restrict Lithun in the use of physical force upon students in his classroom. That authority has been given to school boards by the Legislature and it is not our function or purpose to dilute that authority in the name of academic freedom.

## IV

■ Lithun's last group of issues is concerned with the sufficiency of the evidence introduced at the hearing before the School Board and at the trial. He objects to the introduction of evidence of events which occurred in prior years as grounds for dismissal because the witnesses agreed that the event which occurred in the last school year was insufficient upon which to base a dismissal. Thus Lithun's position is that if the event of the school year in which his contract was terminated, i. e., the slapping of a student in the face during a class at South Junior High School on October 26, 1979, is isolated, that event, in itself, would be insufficient to terminate his contract. We cannot agree that the School Board was not permitted to consider past events of a similar nature. Although each event, when considered in isolation, might not be a sufficient basis for terminating Lithun's contract, the School Board was not required to ignore what had taken place in previous years concerning similar incidents in which Lithun was involved. The school administrators saw an emerging pattern as to Lithun's actions in dealing with discipline problems which concerned them and which they attempted to correct. The School Board was entitled to consider these smaller past events which marked that pattern. The past events of which Lithun complains are all events containing a similar characteristic, i. e., they involved the use of physi-

cal force to discipline students. Significantly, those past events were a part of the evidence which the School Board used to illustrate that Lithun had received directives as to his use of physical force to discipline students. The memorandum opinion of the trial court indicates the evidence was considered as such when it states in its summation of the evidence: "The School District relies heavily on the communications after the [student's name] incident on March 29, 1978, to show that Lithun was put on notice of his expected conduct in disciplining students." We believe evidence of these past events was admissible for this purpose. Our conclusion is supported by judicial opinions in other jurisdictions cited by the School Board in support of that position. *Blascovich v. Board of School Directors*, 49 Pa.Cmwlth. 131, 410 A.2d 407 (1980); *Mavis v. Board of Ed. of Owensboro Indep. Sch.*, 563 S.W.2d 738 (Ky.1978); *Barnes v. Fair Dismissal Appeals Board*, 25 Or.App. 177, 548 P.2d 988 (1976); *Powell v. Young*, 148 Ohio St. 342, 74 N.E.2d 261 (1947).

■ Lithun correctly points out that the statute governing dismissal of a teacher, i. e., Section 15–47–38(2), N.D.C.C., requires the School Board to "sustain the charges with evidence produced at such hearing with witnesses who shall be subject to cross-examination by the teacher or his representative." [6] He argues that the School Board did not sustain its burden of proof at the hearing before that board. The primary contention appears to be that the School Board did not present "eyewitnesses" to the events which it alleged were the reasons for the dismissal and, as a result, the School Board failed to meet its statutory burden of proof. Although eyewitnesses did testify at the hearing before the School Board, they testified after the attorney for

---

6. Subsection 5 of Section 15–47–38, N.D.C.C., which governs the nonrenewal of a teacher's contract, does not contain language requiring a school board to sustain its reasons for nonrenewal at the hearing. In *Rolland v. Grand Forks Public School District No. 1*, 279 N.W.2d 889 (N.D.1979), this court concluded that the Legislature intentionally avoided placing an evidentiary burden of proof on the school board in nonrenewal hearings. The specific language in subsection 2 of Section 15–47–38 indicates that the Legislature intended to place an evidentiary burden of proof on the school board in those instances involving dismissal of a teacher during the term of his contract.

the School Board had presented the administration's witnesses to prove the grounds alleged for Lithun's dismissal. Lithun's counsel, prior to introducing witnesses in behalf of Lithun, moved the School Board to dismiss the charges against Lithun. The motion was denied by the School Board.

We reject any argument that the witnesses whom the School Board is required, by statute, to call to sustain its charges must be eyewitnesses to the actions which resulted in the charges. To impose such a requirement without very specific language in the statute to that effect would be to impose an even greater requirement than is necessary to convict a defendant in a criminal action wherein the prosecution must prove commission of the crime beyond a reasonable doubt. Circumstantial evidence is admissible in a criminal action and a criminal conviction may be based upon circumstantial evidence. Some of the evidence introduced at the hearing before the School Board was circumstantial evidence but much of it was direct testimony by administrators involved in discussions with Lithun following the disciplining incidents in which physical force was used.

The trial court, in considering this question, noted that the hearing before the School Board involved some 18 hours extending over a period of three days. The proceedings were recorded and, as we have already discussed, were introduced into evidence at the trial. Those proceedings, covering some 709 pages, were considered by the trial court and it concluded:

"Having reviewed the 709 page transcript, the Court finds that the board sustained the charges at the school board hearing and that the reasons given for the discharge are not frivolous or arbitrary and sufficient cause was shown to justify dismissal."

We have reviewed the transcripts of the hearing before the School Board and we agree with the trial court that sufficient evidence was introduced to sustain the charges against Lithun.

▇ Finally, Lithun contends that at the trial on the breach-of-contract action before the district court, the School Board did not carry its burden of showing that good cause appeared for Lithun's dismissal. The trial court found that Lithun did have notice of the conduct expected of him and did violate the directives given him by the school administration. The trial court further determined that the termination of Lithun's contract was justifiable for reasons of insubordination, i. e., an unjustified refusal to obey reasonable rules promulgated by the school authorities. Insofar as the testimony adduced at the trial court level resulted in findings of fact by the trial court, we are governed by Rule 52(a), N.D. R.Civ.P., and those findings will not be rejected by this court unless we determine them to be clearly erroneous.

Without attempting to review in detail all the evidence resulting in the trial court's findings and conclusions, we believe the evidence reveals that after some earlier incidents involving the use of physical force in disciplining students, Lithun was instructed to discontinue the use of any physical force unless he first contacted the principal of the building in which he taught; that after one of those incidents in March 1978, involving the use of a belt to strike a student, certain school administrators recommended to the superintendent of the School District that Lithun be discharged; that the superintendent, after meeting with Lithun and considering all the factors involved—including the fact the student was not permanently injured and the discipline problems the student had caused—determined that Lithun should have a second chance to show that he could control himself in the disciplining of students; that following this meeting Lithun was informed by the superintendent in a letter that although his performance was unacceptable and would be considered gross inefficiency he would be given another opportunity to prove himself but that Lithun's failure in the future to follow the district policy on corporal punishment and the specific instructions of his principal would be considered as an unwillingness to perform his duties under the contract; and that subsequent to this inci-

dent Lithun, in September and October 1979, again used physical force on students in his classroom including pulling the hair of one student and slapping another student in the face. These facts are, we believe, sufficient to sustain the charges of the School Board that Lithun was insubordinate.

This case does not involve the authority of school administrators and teachers to deal with recalcitrant students who may, in many instances, try the patience of the most self-controlled educator. It does involve a teacher who, after being informed that he no longer was to use physical force in disciplining students, continued to do so. Lithum's actions in violating the directives of the school administrators constituted insubordination on his part and constituted grounds for his dismissal by the School Board.

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.