**Robert WASTVEDT, Plaintiff and Appellant,**

v.

**STATE of North Dakota, d/b/a The University of North Dakota, Williston Center, Defendant and Appellee.**

**Civ. No. 10853.**

Supreme Court of North Dakota.

July 11, 1985.

---

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Gary R. Thune, Sp. Asst. Atty. Gen. (argued), McConn, Fisher & Thune, and Boyd L. Wright, Sp. Asst. Atty. Gen., Grand Forks, for defendant and appellee.

ERICKSTAD, Chief Justice.

Robert Wastvedt appeals from a judgment dismissing his complaint against the University of North Dakota, Williston Center [the University]. We affirm.

Wastvedt was employed as an assistant professor of chemistry and physics at the University from the fall of 1970 through the spring of 1980. During this time, he was granted a full-time tenured appointment with the University. He was employed full-time during the 1979–1980 academic term at a salary of $18,689. No contract was entered into between the parties for the 1980–1981 academic term. On November 24, 1982, Wastvedt brought suit in district court alleging that the University offered him only part-time employment for the 1980–1981 academic term at a salary of $9,345. This offer, he alleged, constituted a failure by the University to reemploy him under applicable tenure provisions and resulted in a denial of his right to formal notice of termination at least twelve months prior to the expiration of his appointment. He requested damages of $50,-000.

The tenure provisions relied upon by Wastvedt in asserting his claim are contained in the University's Faculty Handbook,[1] dated August 15, 1975, which was

1. In *Sacchini v. Dickinson State College*, 338 N.W.2d 81, 84–85 (N.D.1983), we said that "The Faculty Handbook is especially important in a case involving the tenure rights of faculty in North Dakota public colleges and universities because, unlike elementary and secondary teachers, college instructors have no statutory law to protect their employment rights. Since its 1971 amendment by the North Dakota Legislature, § 15–47–27, N.D. C.C., entitled 'Time for renewal of teachers' contracts', does not apply to teachers employed by the State Board of Higher Education. *See Zimmerman* [*v. Minot State College*, 198 N.W.2d 108, 112 (N.D.1972).]"

admitted as an exhibit at trial. The following provisions therein are relevant:

"A. TENURE

"1. Tenure for a faculty member shall be considered recognition of continuous appointment to the staff of the institution, subject to the conditions defined in this policy.

\* \* \* \* \* \*

"E. TERMINATION OF APPOINTMENTS OF TENURED FACULTY AT THE END OF A CONTRACT PERIOD

"1. Termination of an appointment with tenure may be based upon financial exigency, loss of legislative appropriations, loss of enrollment, consolidation of departments, or elimination of courses. In such cases, primary consideration shall be given to length of service and tenure status in retention of faculty members within the affected department or division. Other factors such as curriculum requirements, professional achievements, breadth of competence, and equal employment opportunity also should be considered and may prove to be conclusive.

"2. A tenured faculty member selected for termination under this section shall be given formal notice of termination by the Dean at least twelve months prior to the expiration of an appointment."

Prior to trial the parties agreed to the formulation of several issues to be resolved by the trial court which included the following:

"Was Robert Wastvedt offered full-time employment on the 25th day of July, 1980, and did he then reject said offer, thereby waiving his right to notice of termination and any and all other rights otherwise applicable to tenured faculty members of the University?"

The trial was held before the court without a jury. During the trial, a major factual dispute arose regarding the nature, meaning and significance of various verbal exchanges between Wastvedt and the University's Dean, Garvin L. Stevens, and Director of Instruction, Gerald N. Rooks, during the spring and summer of 1980.[2] A brief review of the undisputed facts will aid the reader in understanding those facts that the parties now dispute.

During the time of his employment with the University, Wastvedt owned a farm located in Traill County, North Dakota, and also had business interests in Williston. He testified that he recalled telling Gerald Rooks that he made more money before and after school than he made teaching. Wastvedt was in the process of obtaining a divorce from his wife during the 1979–1980 academic term.

On March 28, 1980, Garvin Stevens sent a letter to the attorney Wastvedt had employed in conjunction with his divorce indicating that Wastvedt would not be offered a full-time contract for the 1980–1981 academic term, due to a "drastic decrease of enrollment in the science area in which he teaches." The letter stated that Wastvedt would be offered a part-time position at a salary of $6,200. On May 15, 1980, the University sent Wastvedt a written contract proposal for a part-time teaching position at a salary of $9,345. Wastvedt did not return within 15 days a copy of the contract proposal accepting or rejecting it as requested by the University. Wastvedt met with Stevens and Rooks on July 25, 1980, five weeks prior to the start of the 1980–1981 academic term, to discuss a contract for that term, but none was entered into.

Wastvedt's version of the facts is that he was never offered the equivalent of a full-time contract for the 1980–1981 academic term, but had such an offer been made he would have accepted it. He testified that he first learned of the University's intention to offer him a part-time contract on

2. The University's Faculty Handbook contains general administrative organization provisions which state in part that the Dean "is the final authority in the employment of all College personnel," and that the Director of Instruction serves "as the chief advisor to the Dean in the hiring, promotion and termination of all instructional personnel."

March 28, 1980, at a meeting with Stevens. Wastvedt said he instructed Stevens to notify the attorney he employed in conjunction with his divorce of this fact because, as he explained, "it could make a difference" in the divorce proceedings.

Wastvedt testified that, at the July 25 meeting with Stevens and Rooks, "[t]hey were offering a part-time position. I told them if this is all they had to offer that they should open that position up."

A different version of the facts was told by Stevens and Rooks. Stevens testified that during a meeting with Wastvedt in March, 1980, the two discussed Wastvedt's "personal needs and some of his personal desires, one of which was possibly a part-time contract or not teaching at all or even leaving Williston because of the divorce." Stevens further testified that he offered Wastvedt a part-time contract only after discussing the matter with Rooks, who indicated that Wastvedt was primarily interested in only a part-time contract.

Rooks testified that Wastvedt indicated to him, during a conversation had during the latter part of the 1979–1980 academic year, that he "could not sign a full-time contract or any contract because the settlement hadn't been reached with his wife." Rooks testified that it was his understanding that Wastvedt did not want a full-time contract. Rooks further testified that on July 25 he offered Wastvedt three contract options: (1) the original contract proposal of May 15, 1980, (2) a part-time contract proposal at a salary of $14,449 which would involve teaching more hours than under the original contract proposal but would include no office hours, committee assignments, or student counseling, and (3) a verbal offer of a full-time teaching load of 35 hours per week at the same salary Wastvedt had earned the previous year, provided such a contract was signed that day. Wastvedt declined to sign any contract at that time. Stevens testified that he personally did not offer Wastvedt a full-time contract because Wastvedt and Rooks had already discussed that option. Rooks testified:

"A. ... [T]here was always a full-time job for Bob Wastvedt. We wanted him as a teacher at the college. We were doing everything we could in this July 25 meeting to get him to sign a contract.

\* \* \* \* \* \*

"A. We did not spend much time on the full-time contract. There was never one written out because he had told us that he wanted something on the part-time level.

"Q. ... [W]here was the offer of a full-time contract?

"A. The only time I offered it was in my office, and I said to Bob, 'Would you sign a full-time contract?' That was all that was said. He said, 'No,' and I didn't go any further into it.

"Q. Did he say, no, he would not sign a full-time contract or, no, he would not sign a contract that day?

"A. He said he would not sign any contract."

The trial court issued written findings of fact and conclusions of law. Those findings and conclusion relevant to the issues raised on appeal follow:

## "FINDINGS OF FACT

\* \* \* \* \* \*

"5. By the more credible evidence, plaintiff was offered both part-time and full-time employment for the 1980–81 academic year and failed to accept the same in a timely manner.

"6. Plaintiff instructed defendant to declare his teaching position open and defendant properly complied, following the meeting of the parties on July 25, 1980.

\* \* \* \* \* \*

"8. Plaintiff did not inquire of defendant or elect to exercise any of the administrative remedies available to a tenured faculty member under the State Board of Higher Education policies and procedures, even though plaintiff had read the UND–Williston Faculty Handbook and

had the advice and counsel of the NDEA on these matters.

\* \* \* \* \* \*

"CONCLUSIONS OF LAW

"1. Plaintiff was offered full-time employment by defendant, for the 1980–81 academic year, which plaintiff failed to accept in a timely manner. By failing to accept said offer of employment and by advising defendant's administrators to open said teaching position, plaintiff has rejected said offer and thereby waives his right to twelve months' notice of termination."

I

Wastvedt contends that the trial court's findings of fact numbers 5, 6, and 8 are clearly erroneous.

■ The trial court made its findings of fact after having had the opportunity of listening to and observing the appearance and demeanor of the witnesses. Thus, on appeal we are limited in our review of these findings by Rule 52(a), N.D.R.Civ.P., which reads in relevant part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *E.g., Hedin v. Hedin* (1985), 370 N.W.2d 544, 548 (N.D.1985); *In Re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973), citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Only when it has been demonstrated that the finding of fact lacks substantial evidentiary support or was induced by an erroneous view of the law will this Court disturb the finding of fact made by the trial court. *Bergquist v. Speldrich*, 351 N.W.2d 448, 449 (N.D.1984).

■ The trial court heard the conflicting testimony presented in this case concerning the discussions had between the various parties and, because it is in a superior position to judge credibility, we give considerable deference to its findings. *Id.* In *Hoge v. Burleigh County Water Management District*, 311 N.W.2d 23, 28 (N.D. 1981), we said:

"The trial court's findings are to be given the same weight as a jury verdict and, in reviewing those findings, the evidence must be viewed in a light most favorable to the findings. On appeal it is not the function of this court to substitute its judgment for that of the trial court. . . . Questions of fact decided by the trial court upon conflicting evidence are not subject to reexamination by this court. The mere fact that we might have viewed the facts differently if we had been the initial trier of the case does not entitle us to reverse the lower court." [Citations omitted.]

■ Viewing the conflicting evidence in a light most favorable to the disputed findings, we cannot conclude that they are clearly erroneous. It was the exclusive function of the trial court to determine the credibility of the witnesses and the weight to be given their testimony. *Martinson Bros. v. Hjellum*, 359 N.W.2d 865, 869 n. 2 (N.D.1985); *Weiss v. Anderson*, 341 N.W.2d 367, 371 (N.D.1983). The trial court was presented with substantial evidence to support a finding that Wastvedt, on his own volition, chose not to accept the University's offer of a full-time contract for the 1980–1981 academic term, and told the University administrators to open or advertise his position for a replacement.

■ In light of the trial court's findings, it is evident that the University did not elect to terminate Wastvedt's tenured appointment so as to be required to give formal notice of termination pursuant to the Faculty Handbook.

II

Wastvedt's remaining contention concerns the trial court's admission into evidence of certain notes written by Gerald

Rooks during the July 25 meeting with Wastvedt on a sheet of paper attached to one of the contract proposals, and pages from Garvin Stevens' desk-top calendar containing written references to meetings with Wastvedt. Prior to trial, Wastvedt's attorney stipulated that these exhibits could be offered "without objection as to foundation," but objected at trial to the admission of the notes and the calendar pages as substantive evidence. There was no objection to allowing the exhibits to be used to refresh the memories of witnesses Rooks and Stevens, and they were then utilized for this purpose. The trial court thereafter received the exhibits over the objection of Wastvedt's attorney.

Wastvedt cites encyclopedia authority to support his view that the exhibits were inadmissible. The University argues that the exhibits were admissible as business records pursuant to Section 31–08–01, N.D. C.C., and Rule 803(6), N.D.R.Ev., and argues, regardless, that they were properly admitted in accordance with our decision in *Lithun v. Grand Forks Public School District No. 1*, 307 N.W.2d 545, 550 (N.D. 1981), wherein we said:

> "We have indicated that the introduction of allegedly inadmissible evidence in a nonjury case is rarely reversible error. *See, e.g., Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417 (N.D. 1979). In *Schuh v. Allery*, 210 N.W.2d 96 (N.D.1973), this court cited with approval the decision in *Builders Steel Co. v. Commissioner of Internal Rev.*, 179 F.2d 377 (8th Cir.1950), holding that an appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence unless all the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made."

In this case it is clearly evident that all significant information contained in the exhibits was received at trial in the form of competent oral testimony. Wastvedt has failed to point to any finding made by the trial court which rests upon information contained in the exhibits which was not also received through the testimony of Stevens and Rooks. He merely asserts that the trial court accorded "great weight" to these exhibits. In light of these circumstances, we conclude that the trial court committed no error in admitting the exhibits.

For the reasons stated, we affirm the trial court's judgment dismissing Wastvedt's complaint.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I agree with the majority opinion, but I write specially to express my concern that our decision today not be read as encouraging the institutions of higher education to rely upon oral offers of full-time employment or oral offers of less than full-time employment when the offeree is entitled to full-time employment. If the policies of the institution do not require such offers to be in writing, good practice nevertheless indicates that the offers should be in writing or at least confirmed in writing.

However, a fair reading of the Faculty Handbook introduced into evidence would, at least to me, indicate that offers of employment are to be in writing. The University concedes that as a tenured professor Wastvedt was automatically entitled to the offer of a full-time contract under the provisions of the Faculty Handbook unless the provisions for termination are followed. No termination proceedings were instituted. The Handbook contains a form for notifying the individual employee of his appointment, the term, and the salary. Although the University contends an offer of full-time employment was made to Wastvedt, this form apparently was not used because the University relies on an oral offer. The Handbook further specifies that contract proposals, indicating title, salary, date and period of appointment, "and any changes in status are sent to each

faculty member ... on or before April 15 of each year." In this instance no proposal, neither a proposal for full-time nor part-time employment, was made by April 15. Although Wastvedt's attorney was notified as of March 28 that Wastvedt would be offered only part-time employment, Wastvedt did not receive a contract until May 15. The issue of a *written* offer of full-time employment is not decisive of this case, but a written offer of such employment should have been made, regardless of the oral negotiations with Wastvedt. If a written offer had been made, as I believe the Faculty Handbook contemplates, we would not now be called upon to review findings of fact to determine whether or not they are clearly erroneous.