Arthur L. RUUD and Ruby Ruud,
Plaintiffs and Appellees,

v.

Raymond L. LARSON and Yvonne J.
Larson, Defendants and Appellants.

Civ. No. 11,086.

Supreme Court of North Dakota.

July 30, 1986.

Serkland, Lundberg, Erickson, Marcil & McLean, Fargo, for plaintiffs and appellees; argued by Ronald H. McLean.

Pearson & Christensen, Grand Forks, for defendants and appellants; argued by Ronald F. Fischer.

GIERKE, Justice.

Raymond and Yvonne Larson [Larson] appeal from a district court judgment awarding damages to Arthur and Ruby

Ruud [Ruud] for Larson's breach of a real estate lease. We affirm.

In 1966, Ruud executed a ten-year lease to Raymond Larson, Obed Oas, and Judith Oas on a parcel of property on Main Avenue in Fargo. Larson constructed and operated a car wash and gasoline sales outlet on the property. In 1976, Ruud leased the property to Larson for another ten-year term. Larson failed to make timely rental payments for January and February 1982 and failed to pay the 1981 property taxes as required by the lease. Ruud commenced this action in March 1982.

Ruud's action against Larson for breach of the lease was tried to the court. The trial court found that Larson had breached the lease by failing to pay real estate taxes for 1981, 1982, 1983, 1984, and the first six months of 1985; failing to make rental payments totalling $24,500; failing to provide liability insurance; and failing to keep the property in good repair. The court also specifically found that Ruud had made diligent, good faith efforts to sublease the property and thereby mitigate damages. The trial court awarded damages for the breach and ordered Larson to pay Ruud's attorney's fees, as provided under the terms of the lease.

The sole issue raised by Larson on appeal is whether the trial court's finding that Ruud made a good faith effort to mitigate damages is clearly erroneous.

■■■ We have previously held that a landlord generally has a duty to mitigate the damages which arise out of his tenant's default. *Mar-Son, Inc. v. Terwaho Enterprises, Inc.*, 259 N.W.2d 289, 291 (N.D. 1977); *see also Snortland v. Larson*, 364 N.W.2d 67, 70 (N.D.1985); *Wallwork Lease & Rental Co. v. JNJ Investments, Inc.*, 303 N.W.2d 545, 547 (N.D.1981). Once the ten-

ant defaults, the landlord has a duty to make a good faith effort, expending reasonable effort and diligence, to relet the property. *Mar-Son, supra,* 259 N.W.2d at 292. The burden is upon the tenant to establish a lack of good faith by the landlord; in the absence of such a showing, it will be presumed that the landlord acted in good faith. *Mar-Son, supra,* 259 N.W.2d at 293. The determination whether the landlord has made a good faith effort to mitigate damages is a finding of fact which will be set aside on appeal only if it is clearly erroneous. *Mar-Son, supra,* 259 N.W.2d at 292. A finding of fact is clearly erroneous when, although there may be some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Wastvedt v. State,* 371 N.W.2d 330, 334 (N.D.1985).

Prior to trial, counsel for Ruud and Larson agreed to withhold further proceedings in this action because Larson's corporation, Mid-State Oil Company, had filed for bankruptcy.[1] On July 16, 1982, the bankruptcy court approved the sale of substantially all of Mid-State's assets to Charles Luna. According to testimony by Ruud's counsel, Larson thereafter proposed a possible sublease of the Main Avenue property to Luna, with Larson agreeing to pay the tax arrearages due under the lease.

Larson's counsel drafted and forwarded to Ruud a proposed sublease. Ruud's counsel, dissatisfied with certain language in the proposed sublease, redrafted it and sent a signed copy to Larson's counsel.[2] Although the sublease did not mention back taxes, the cover letter to counsel reiterated that the sublease was contingent upon Larson's agreement to pay the tax arrearages. Larson did not sign the sublease, but instead responded by making

---

1. Matters were significantly complicated at this point because Mid-State was claiming an interest in the leased premises and the building thereon.

2. The rejection of Larson's proposed sublease by Ruud's counsel was unrelated to the agreement to pay tax arrearages. The sublease prepared by Larson's counsel ran from Mid-State to Luna,

and stated that the original 1976 lease to Larson had been assigned to Mid-State. Because Ruud consistently claimed that Mid-State had no interest in the property, the sublease was rejected and redrafted by Ruud's counsel to reflect Ruud's understanding of the agreement reached by the parties.

three alternative counter-proposals, offering to purchase the land from Ruud or to sell the building to Ruud. The counter-proposals were rejected, and the property was never subleased to Luna.

Larson contends that Ruud refused to sublease the property to Luna unless Larson agreed to pay the back taxes and attorney's fees, and that, as a matter of law, a landlord may not condition his consent to a sublease upon payment of all arrearages under the lease. Ruud concedes for the purposes of this case that in mitigating damages a landlord cannot make approval of a sublease contingent upon payment of all arrearages, but he claims that this principle has no application to this case.

■ The Luna sublease agreement was negotiated by counsel for the parties. As part of that agreement, Larson *agreed* to pay tax arrearages and attorney's fees as required by the lease. This is not, therefore, a case in which the tenant has located and presented a sublessee, and the landlord has refused to agree to the sublease until all arrearages are paid. Rather, there were negotiations between counsel for the parties, and an agreement was reached which would provide a new tenant to assume Larson's responsibility under the lease.

The record does not indicate that Larson ever expressly requested that Ruud consent to a sublease to Luna without requiring payment of the arrearages. Upon receiving the executed sublease agreement from Ruud, Larson did not request that he be released from his agreement to pay the arrearages. He refused to sign the agreement, and instead made a written counter-proposal offering to purchase the land from Ruud or to sell the building thereon to Ruud.

The trial court specifically found that Ruud made a good faith effort to arrange a sublease of the property to Luna, but that Larson decided not to proceed with this sublease. Having reviewed the record, we conclude that this finding is not clearly erroneous.

When the Luna sublease could not be arranged, Larson made other attempts to sublease the property through a Fargo realtor. Because Ruud had been threatened by Mid-State's bankruptcy counsel with a contempt citation if Ruud interfered with the property, Ruud made no attempt to sublease the property until the bankruptcy court ruled in November 1983 that Mid-State had no interest in the property. Immediately after the bankruptcy court's ruling, Ruud took possession of the property and completed necessary repairs and cleaning. Ruud made diligent attempts to rent the property, including over 140 contacts with approximately 50 prospective tenants. Ruud received no written offers to lease the property.

Larson contends that Ruud's failure to hire a real estate agent and seeking an increased rent when attempting to relet the property established a lack of good faith.

■ Although failure to hire a real estate agent may be a factor to consider in determining whether a landlord has made a good faith effort to relet the premises, it does not, as a matter of law, bar the landlord's claim. *See Kamada v. RX Group Limited,* 639 S.W.2d 146, 149 (Mo.Ct.App. 1982). The record establishes that Larson employed a real estate agent who was unsuccessful in reletting the property, and Larson has presented no evidence to show that Ruud's use of a real estate agent would have resulted in a reletting of the property. *See Kamada, supra.* The record documents the extensive efforts of Ruud in attempting to secure a new tenant.

■ Larson contends that Ruud's attempt to secure a higher rental establishes lack of good faith. The record indicates that Ruud sought to relet the property at $1,200 per month, whereas the 1976 lease between Ruud and Larson required $700 monthly payments. Although attempting to relet at a higher monthly rent is a factor which may be considered in determining whether the landlord has made a good faith effort to relet the premises, it does not, as a matter of law, bar the landlord's claim. *See United States National Bank of Ore-*

*gon v. Homeland, Inc.*, 291 Or. 374, 383, 631 P.2d 761, 766 (1981).

Larson's own witness, an experienced commercial realtor in Fargo, testified that $1,200 was a reasonable rental for the property at that time. Furthermore, Larson, in attempting to relet the property, was also seeking $1,200 per month. Larson presented no evidence which would indicate that $1,200 per month was not a fair rental value for the property, nor did Larson present evidence that any offers to lease at a lesser amount were received or rejected by Ruud.

The trial court made the following finding of fact:

"The Ruuds, after regaining possession and doing some repair, advertised the property in the local newspaper and used a well maintained sign in an effort to rent the property. These attempts produced over 140 contacts and 50 or more potential tenants. The Ruuds were capable of renting the building on their own behalf. The Ruuds' efforts to lease the premises to another tenant were all vigorous, substantial and in good faith."

The party challenging a finding of fact on appeal bears the burden of demonstrating that the finding is clearly erroneous. *Routledge v. Routledge*, 377 N.W.2d 542, 546 (N.D.1985); *Byron v. Gerring Industries, Inc.*, 328 N.W.2d 819, 821 (N.D.1982). We have thoroughly reviewed the record and we are not left with a definite and firm conviction that a mistake has been made; therefore, the trial court's findings are not clearly erroneous.

The judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, Justice, dissenting.

Ruud does not take issue with the principle that in mitigating damages, a landlord may not make approval of a sublease contingent upon payment of all arrearages. With this proposition, I agree. Building upon this premise, the majority concludes that if, however, in negotiations, the tenant agrees to pay these arrearages and then reneges, the landlord may make approval of a sublease contingent upon payment of all arrearages. With this proposition, I disagree. I cannot discern a reason for the distinction drawn, and therefore I dissent.

Apparently, there is some sort of estoppel theory underlying the majority's rationale—that a tenant, having agreed, and then disagreed, to undertake payment of arrearages to facilitate a sublease agreement, is estopped from expecting the fruition of that sublease, absent payment of arrearages, even though the landlord has no legal right to demand such payment as a condition precedent in the first place.

It is not the tenant's good faith that we are evaluating here—it is the landlord's good faith in mitigating damages. Because the tenant produced a willing, able and suitable subtenant, I believe that the landlord acted neither reasonably nor in good faith when he rejected the offer to sublease. It must be remembered that under the sublease Larson remained liable for all obligations as tenant under the lease, and under the lease Larson was responsible for arrearages and attorney's fees. Thus no special agreement was necessary to hold Larson responsible for obligations he owed under the lease.

I therefore respectfully dissent.